320 So.2d 779 (1975)
Jan Lynn Y. MAGEE
v.
Joe MAGEE.
No. 48339.
Supreme Court of Mississippi.
October 13, 1975.
*780 Mounger & Mounger, Tylertown, for appellant.
Ratcliff & Morgan, McComb, for appellee.
Before PATTERSON, INZER and WALKER, JJ.
INZER, Justice.
This is an appeal by Jan Lynn Y. Magee from the decree of the Chancery Court of Walthall County modifying a decree relative to the custody of Sharon Denise Magee, a girl, five years of age, so as to award the custody of the little girl to the father Joe Magee. We reverse and render.
The record reflects that appellant and appellee were formerly man and wife. To their union were born three children, David Allen, age 15, Donald Ray, age 9, and Sharon Denise, age 5. The parties were divorced by a decree of the Chancery Court of Walthall County rendered on November 15, 1973, and by the terms of this decree, the mother, appellant here, was awarded custody of the three children with the right of appellee to have them visit with him every other weekend. He was required to contribute $150 per month to help support the children.
Two days after the divorce was granted, appellee married his present wife, Wilma Magee, and they reside near Summit in Pike County. His present wife has two children by a former marriage. On March 29, 1974, appellee filed a petition to modify the former decree so as to award him the custody of David Allen and Sharon Denise. The petition alleged that there had been a change in circumstances because the mother of the children had been for the past two or three weeks living openly with a man to whom she was not married and she had carried on unlawful sexual intercourse with the man to which the children had been exposed. It was alleged that this conduct was such as to render the mother unfit to have the custody of the children and appellee had a fit, proper and suitable home in which to rear the children.
Appellant answered the petition and denied that there had been any change of circumstances since the divorce decree, except as to financial need due to the rise in living expenses. She denied the allegations of the petition relative to her conduct. She charged that the child Donald Ray was then and at the time of the divorce a retarded child and was attending the State School at Ellisville and that the father should be required to pay his room and board at the school. She also charged that the petitioner should be required to pay her an attorney's fee and the costs.
The only evidence tending to show any misconduct on the part of the appellant was the testimony of appellee, his present wife, and David, the fifteen year old son.
The only thing appellee knew of his own knowledge relative to any misconduct on the part of his former wife was that on March 25, 1974, he tried to reach his son by telephone at their apartment. He testified that he called several times and received no answer. The last time he called was about 11 p.m. and when he received no answer, he, his present wife, and another lady drove to Tylertown. He said he found appellant's car parked in front of Evon Harvey's home where he thought it would be. They watched the car until *781 about 12 o'clock and then called the apartment again and no one answered. They then watched the car until about 2 a.m. and it was still parked in front of Harvey's home and all the lights were out in the house. He said that later he asked appellant about her relations with Mr. Harvey and she told him that they were married, but when he checked, he found out they were not married.
His present wife testified to the same facts relative to going to Tylertown, except she testified they first went to appellant's apartment and no one was there.
David, the fifteen year old son, was called as a witness by appellee. Because of the rather unusual circumstances relative to his testimony, it will be detailed to some extent. David testified that his mother had told him that she and Mr. Harvey were married and he thought they were married. Counsel for appellee then asked him if he remembered discussing the matter with him in his office shortly after his birthday and David replied, "Yes, sir." When asked if he remembered telling him that he, his mother, and sister had stayed overnight at Mr. Harvey's, David said he told him that he and his sister stayed a part of the time. When asked about what he said about his mother staying there overnight, David said he told him that she stayed there a part of the time, but not overnight. Counsel for appellee then replied, "I am not talking about what you told me today, I'm talking about what you told me in my office." At this point, appellant objected to appellee impeaching his own witness. Although counsel for appellee did not claim surprise, he insisted that he had the right to cross examine the witness because he had made a statement in his presence and in the presence of his client to which he was now testifying differently. The court ruled that under the circumstances, he would allow counsel to cross examine his own witness as an adverse witness. On cross examination David admitted that he told the lawyer in the presence of his father that he, his mother, and little sister spent the night at Mr. Harvey's house and that he and his sister slept in opposite bedrooms and his mother slept in the bedroom with Mr. Harvey. He also admitted that he told the lawyer that Mr. Harvey had come to his mother's house and stayed there overnight. David was then asked if what he had told the lawyer in his office was true, and he replied that it was not and that he had lied. When asked why he had lied, David replied he did not know. When asked if he wanted to continue to live with his mother, he replied that he did.
On further examination, David testified that his mother had never spent the night with Mr. Harvey, that he had never seen his mother do any immoral act, and that she had been a good mother to him and his little sister. He said he was afraid of his father because his father had struck him in the stomach with his fist about two years before and he had been afraid of him ever since. He also testified that when his father took him to the lawyer's office, his father told him to tell the lawyer that they had been staying at Mr. Harvey's house and that his mother had told him that they were married. He said because of his fear of his father, he had to give answers to questions that he knew were not true and that is what occurred in the lawyer's office. He also testified that his father's lawyer had told him that his statements in his office had been taped and that his father told him that they were going to use the tapes against him.
In this connection, the record reflects that counsel for appellee did have some tapes on the table in front of him in the courtroom, but it developed that these tapes were blank tapes. Apparently, their purpose was an attempt to influence David to testify to the same thing that he had told in the lawyer's office. However, throughout his testimony under oath, David maintained what he had said about this mother and Mr. Harvey was not true, and he had lied to the lawyer. He also testified that no one had tried to influence him *782 or promised him anything to testify as he did in court.
Appellant was called as an adverse witness and she testified that she met Mr. Harvey on about the first of February and had dated him since that time. She said that Mr. Harvey had formerly been married and had a seven year old daughter who lived with him and she had allowed her daughter to go to Mr. Harvey's home and spend the night with his little girl and the Harvey child had spent the night in her home. She denied that she represented to her son that she and Mr. Harvey were married. She also denied that she told Mr. Magee that she and Harvey were married. She said he asked her if she and Harvey were married and she told him that they might be or might not be, but in any event, it was none of his business. She denied that she had ever spent the night in Mr. Harvey's home, or that he had spent the night in her home. She denied that she had ever had improper relations with Mr. Harvey at any time or place. She did admit that she had gone on camping trips over the weekend with Mr. Harvey when the children were with their father. She said this was with a group of people and nothing immoral occurred on these trips. When asked on cross examination about her car being at Mr. Harvey's on the night of March 25, she said it probably was, but she was not at his house on this night. She could not at this time explain why her car was there. Later when recalled on direct examination, she said she did remember that this was David's birthday and Mr. Harvey came to the birthday dinner that night. She did not know how he got to her home, but she let him drive her car to his home.
Mrs. Ruby Brown, who occupies the other side of the duplex apartment where appellant had lived for the past nine months, testified that she saw appellant and the children every day and that the children were well cared for and happy. She said the appellant was a good mother and she took the children to church when they were with her on Sunday. She prepared good meals and looked after the children's every need. She testified that she stayed home all the time and she knew that Mr. Harvey had never spent the night in appellant's apartment because there was a door between her apartment and appellant's which she had only to open to enter Mrs. Magee's apartment and if any man had been there at night, she would have known it.
Mr. Jewell Harvey, the father of Evon Harvey, testified that he lived next door to his son with just a garden between their houses, and although appellant had been to his home and his son's home, he knew she had never spent the night in his son's home.
The chancellor found from this evidence that appellant had been guilty of adultery or improper relations with Mr. Harvey to which the little girl had been exposed and it was for the best interest of the little girl for her custody to be placed with her father with the right of the mother to have the child visit with her two weekends out of each month from Friday afternoon until Sunday afternoon. The chancellor also found that since the divorce the father had remarried and had a suitable home for the care of the child. The chancellor acceded to the wishes of David the fifteen year old son to continue to live with his mother and allowed him to remain in her custody.
The effect of this holding was to leave the custody of the two boys, David and Donald Ray, with the mother and the little girl in the custody of the father. For some unexplained reason the father did not seek the custody of Donald Ray who is a retarded child and in the State School at Ellisville, but apparently was content to leave his custody and responsibility with the mother.
The principal contention of appellant is that the evidence is not sufficient to support the finding of the chancellor that appellant had been guilty of immoral conduct. Consequently, it is argued that there was *783 no showing of a material change of circumstances which would justify a modification of the original decree awarding appellant custody of her five year old child. Wrapped up in this contention is an assignment of error that the chancellor was in error in allowing appellee to impeach his own witness. We need not pause to explore this assignment of error for the reason that assuming this action was proper, the evidence is not sufficient to support the finding of the chancellor that appellant had been guilty of improper relations with Evon Harvey to which the little girl had been exposed.
When appellee called his son David as a witness, he vouched for his credibility and ordinarily would be bound by his testimony. When David testified contrary to what he had told appellee's attorney, in order not to be bound by his testimony, appellee was allowed to impeach his own witness. This he effectively did and destroyed his credibility by showing he had made a statement contrary to the evidence he gave in court, but this does not mean that the out-of-court statement became evidence on its merits or had any probative value. It was only admissible for consideration on the question of credibility of the witness. The rule seems to be universal that the impeaching testimony does not establish or any way tend to establish the truth of the matters contained in the out-of-court contradictory statement.
Absent the out-of-court unsworn statement which David admitted he made to appellee's lawyer and which is not evidence in this case, the evidence is not sufficient to establish that appellant has been guilty of immoral conduct. What we have is that her car was parked in front of Harvey's house on one occasion until at least 2 a.m., and that she was not at her apartment on that night until at least after midnight. There is proof that she told appellee and David that she and Mr. Harvey were married when in fact she was not married to Harvey. There is also her admission that she had dated Harvey and had gone with him on weekend camping trips with a group of people at a time when the children were with their father. She denied that she had ever had improper relations with Harvey or anyone else. There is no proof that appellant was living openly with Harvey as charged or that she had ever spent the night in bed with him or any other man. Appellee relies entirely upon circumstantial evidence to establish that appellant has been guilty of immoral relations with Harvey.
Rodgers v. Rodgers, 274 So.2d 671 (Miss. 1973), involved a similar charge against the mother of a small child. The evidence relied on to prove the charge was circumstantial. We stated the rule as follows:
In order to establish adultery or fornication by circumstantial evidence, it is not sufficient that the evidence raise an inference of guilt, but it must be strong enough to lead to guilt as a satisfactory conclusion. In order to establish by circumstantial evidence that appellant was guilty of immoral relations with men as alleged in the petition, the burden was upon petitioners to show by clear and convincing evidence both the adulterous inclination and a reasonable opportunity to satisfy the inclination. (274 So.2d at 673).
The evidence in the case before us does not meet this test. There is nothing in the record to show any adulterous or immoral inclination on the part of the appellant. The evidence falls far short of being clear and convincing that appellant had been guilty of conduct that would render her unfit to have the custody of her little girl.
There is no charge that appellant had neglected her child or that she did not properly care for her. The proof showed that she had been a good mother and the chancellor was manifestly wrong in holding that she had been guilty of immoral conduct to which the child was exposed.
Appellant also assigns as error the failure of the trial court to require appellee to pay her a sufficient amount to pay her attorney *784 for representing her in this case. Insofar as we can ascertain from the record, the chancellor did not pass upon this question, since it is not mentioned in the opinion or in the decree. Consequently, this cause will be remanded for the purpose only of a determination of this question. In the event the chancellor determines appellant was entitled to a fee to pay her attorney for representing her in the trial court, the amount will be fixed and an additional amount of one-half of the amount fixed will be assessed against appellee for the services of her attorney in this Court.
For the reasons stated the decree appealed from will be reversed and the decree entered here reinstating the decree of November 15, 1973, in its entirety. The cause will be remanded for the limited purpose of deciding the question relative to attorney's fees.
Reversed and judgment here for appellant and remanded.
GILLESPIE, C.J., and RODGERS, P.J., and SMITH, ROBERTSON, SUGG and BROOM, JJ., concur.