SULLIVAN, Justice,
for the court:
On October 30, 1990, the Chancery Court of Copiah County, Mississippi, Chancellor Michael L. Carr, Jr, presiding, granted J.B. Lewis a divorce from his wife, Mary, “on the grounds alleged in his complaint” and granted Mary Lewis a divorce from J.B. Lewis “on the grounds alleged in her cross-complaint.” The chancellor also awarded Mary One Thousand Dollars ($1,000.00) lump sum alimony and a lien in that amount against J.B.’s real and personal property until paid.
Mary has appealed to this Court, assigning the following issues:
1. Whether the chancellor erred in granting the Appellee a divorce from Appellant when Appellee failed to prove habitual cruel and inhuman treatment;
2. Whether the chancellor was manifestly wrong in his finding of fact that Appellant failed to prove adultery on the part of Appellee; and
3. Whether the chancellor’s award of $1,000.00 lump sum alimony was grossly inadequate and constituted an abuse of discretion.
Mary and J.B. Lewis were married on February 17, 1970. Mary took care of J.B.’s father, Johnny, from the time she and J.B. moved to the property in Crystal Springs (1978) until his death. She received no payment for this activity although she testified that one of J.B.’s brothers offered her fifty dollars ($50.00) a week and provided a maid for her until the late Mr. Lewis deeded all of his land to J.B.. Johnny Lewis died in 1986.
The house that Mary and J.B. shared in Crystal Springs later burned, destroying all contents, and as a result of this fire the insurance paid off the loan to the bank of Nineteen Thousand Dollars ($19,000.00) and paid Thirty Thousand Dollars ($30,-000.00), to J.B. and Mary, which they divided evenly. Mary and J.B. fixed up a trailer on the land and lived in it after the fire.
With her share of the insurance proceeds Mary purchased one trailer and J.B. bought three or four trailers with his portion.
When they separated in July of 1989, six months after the burning of their home, Mary said it was because J.B. was such a bad man and he would not have anything to do with her sexually. She also claimed that J.B. cheated on her. J.B.’s version was that they separated because of disagreements over discipline of the grandchildren who had come to live with them.
Mary contended that J.B.’s adultery and his failure to have sex with her constituted habitual cruel and inhuman treatment. Mary further alleged that J.B. had been having interracial sexual relationships with an adult female who we will call “P.M.”.
P.M. testified that she knew J.B. and had visited with him socially but she had never been to his trailer and she had never engaged in a sexual relationship with him.
K.W. testified that she once worked for the Lewises as a maid and that she is currently buying a trailer from J.B. She stated that while she was employed by the Lewises she had sex a couple of times with J.B. This would have been at some time before the Christmas of 1988 as that was when she quit working for them. K.W. testified that she told Mary about the affair sometime before the house burned. *883 J.B. denied ever having sex with K.W. and claimed it was physically impossible for him.
J.B. claimed habitual cruel and inhuman treatment on the part of Mary. As examples he cites Mary’s praying aloud for the Lord to take J.B., of her hitting and cussing him, and the fact that Mary had always said her children came before J.B.. J.B. admitted that he and Mary had not had a sexual relationship for the last seven or eight years because prostrate trouble caused him to cease sexual relations with Mary. Understandably, he also denied any adultery on his part.
Mary worked all of her married life. For the last four years she had worked at Jitney Jungle where her pay averaged from one hundred fifty dollars ($150.00) to one hundred sixty dollars ($160.00) a week. According to Mary, she gave the check to J.B. who would then give her gas money and money to have her hair done. Mary testified that since the separation she had found it necessary to go to the Gateway Mission for food and had since taken a second job, working two nights a week at the Fish House. Mary’s monthly expenses, according to her testimony, were $125.00 for electricity, $67.00 for gas, $60.00 for having her hair done, and $250.00 for gasoline for her car for a total of $502.00. Mary’s request was for $300.00 a month alimony, one-half of the proceeds of the last trailer sold by J.B., and five years back pay for caring for Johnny Lewis at one hundred dollars ($100.00) a week. Her attorney had already been paid out of her share of the insurance proceeds.
J.B. was not physically able to work and he collected three hundred dollars ($300.00) a month in SSI benefits. He listed the twenty-five acres of land received from his father as one of his assets, along with two or three trailers, his father’s home, which he rented out, a 1964 Chevrolet, a 1981 pick up truck, and some old junked trucks. He received five hundred dollars ($500.00) a month from the trailers he purchased with the insurance proceeds. J.B. has had four by-passes and subsequent surgery to fix an arm that was damaged by a stroke which he suffered during the by-pass surgery. Mary’s Jitney Jungle group insurance covered his medical expenses and he paid her for the premiums.
After a hearing on the matter, the chancellor stated “I don’t think either one of you has proven a ground for divorce. But, I feel like this is one of those occasions where you people are not going to be able to live together.”
I.
DID THE CHANCELLOR ERR IN GRANTING A DIVORCE WHEN THERE WAS A FAILURE TO PROVE HABITUAL CRUEL AND INHUMAN TREATMENT?
We have reviewed the record and find that we agree with the chancellor’s conclusion that none of the parties before the court proved any grounds for divorce. Therefore, no divorce should have been granted. The chancellor does not have the authority to “give” a divorce unless the facts and the law warrant it.
Furthermore, multiple grounds were charged by both Mary and J.B., and the decree of the chancellor does not inform this Court as to what specific ground he found as a matter of fact had been proven.
While generally we will assume that the trial court made determinations of fact that are sufficient to support its judgment, the premise is limited. Pace v. Owens, 511 So.2d 489, 492 (Miss.1987).
It is one thing to employ algebraic techniques to imply the numerical content of “X” in the equation 10 + 6 + X = 23. It is altogether different where, as here, we are asked to assume the content of all variables in an equation X + Y + Z = 23.... We simply have not received enough help from the Chancery Court that we might derive the findings it ought to have made.
Pace, 511 So.2d at 492.
Based on the record and the findings of the chancellor, it was error to grant a divorce to J.B. Lewis on the grounds of habitual cruel and inhuman treatment, and that decree is reversed and rendered.
*884 II.
WAS THE CHANCELLOR MANIFESTLY WRONG IN HIS FINDING OF FACT THAT MARY FAILED TO PROVE ADULTERY ON THE PART OF J.B.?
A divorce on the ground of adultery requires either an admission or a showing of either infatuation for a particular person of the opposite sex or of the defendant’s generally adulterous nature, supported by proof of reasonable opportunity to satisfy. Owen v. Gerity, 422 So.2d 284, 287 (Miss.1982). Mary attempted to show J.B.’s generally adulterous nature by testifying that he frequently cheated on her. The chancellor apparently denied Mary a divorce on the ground of adultery, and from this record we cannot say he was manifestly wrong in denying a divorce on the ground of adultery. We are, however, at a loss to determine what the chancellor did grant a divorce to Mary on and insofar as there is a purported decree of divorce in Mary’s favor on “the grounds alleged in her complaint,” that decree is reversed and rendered.
III.
WAS THE CHANCELLOR’S AWARD OF $1,000.00 LUMP SUM ALIMONY GROSSLY INADEQUATE AND DID IT CONSTITUTE AN ABUSE OF DISCRETION?
This third assignment of error has been mooted by the fact that we have reversed the chancellor and rendered his determination that both or either of these parties was entitled to a divorce on this record.
There is, therefore, no merit to the claim that the $1,000.00 lump sum alimony award was grossly inadequate and constituted an abuse of discretion, because without a divorce there can be no lump sum alimony. The $1,000.00 award is reversed and rendered along with the decree that contains it.
The final decree of divorce to Mary Elizabeth Lewis and J.B. Lewis by the Copiah County Chancery Court is reversed and rendered.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J. and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., not participating.