652 So.2d 1113 (1995)
Robert T. BROOKS
v.
Jane Gunter BROOKS.
No. 92-CA-01197-SCT.
Supreme Court of Mississippi.
March 30, 1995.
*1114 William R. Collins, Montgomery Smith-Vaniz & McGraw, Canton, Richard Redfern, Richland, for appellant.
Charles L. Dunn, Madison, Barry W. Gilmer, Leslie R. Brown, Gilmer Law Firm, Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
DAN M. LEE, Presiding Justice, for the Court:
This appeal arises from the October 20, 1992, "JUDGMENT OF DIVORCE" of the Madison County Chancery Court, granting Jane Gunter Brooks ("Jane") a divorce from Robert T. Brooks ("Robert"), and awarding Jane alimony and property incident to that divorce. The chancellor: 1) awarded Jane periodic alimony which exceeded Robert's net take-home pay, as well as his gross income; 2) granted Jane greater than fifty percent (50%) of the couple's marital property; and 3) awarded Jane substantial lump-sum alimony.
The chancellor erred, as to the burden of proof required to grant Jane a divorce on grounds of adultery. Nevertheless, after our de novo review, we determine that Jane's proof was clear and convincing under the facts in this case, and we affirm the chancellor's grant of a divorce to Jane. However, the totality of the chancellor's awards of alimony and property to Jane was excessive. Accordingly, we reverse the chancellor's awards of alimony and property to Jane, and remand the case for a proper determination of equitable alimony and property distribution.

I.
Jane and Robert were married on July 12, 1957. When the couple married, Jane was employed by a bank, Magnolia Federal Bank for Savings. Robert was employed by his family's dry cleaning business, Grand Cleaners.
Sometime after they were married, Robert acquired an interest in Grand Cleaners. Later, in 1973, Robert and his brother also acquired an interest in another cleaning business, and Kolb's Grand Cleaners emerged as the resulting business name. The business was not lucrative and performed relatively poorly until 1980.
Income from both spouse's employment was required to offset the household maintenance and living expenses of the couple for the first twenty-five years of their thirty-five year marriage. During that time, Jane was gainfully employed, working at six different jobs from the date of her marriage in 1957 until 1981. But, at no time did Jane's salary income exceed $12,000.00 per year. Robert continually worked for the cleaning business.
By 1981, Robert's salary from Kolb's Grand Cleaners had increased to a level where Jane's income was no longer necessary to meet the couple's expenditures; *1115 therefore, Jane discontinued employment. The couple's lifestyle changed, outwardly reflecting the increase in income through expensive automobiles, jewelry, and an elaborately decorated home. Robert continued working, while Jane spent her time on homemaking, social, and civic activities.
In 1985, the couple separated for the first time, the result of Jane asking Robert to leave the marital home. At trial, Jane stated that, at that time, she felt compelled to ask Robert to move out of the house because of his drinking and "staying out late at night," coupled with her suspicion of carousing and womanizing by Robert.
In the latter part of 1987, Jane returned to the work force, working in a management capacity for Kolb's Grand Cleaners at a new branch which was opened. She continued working there until September of 1989.
Although her relationship with Robert was harmonious after their reconciliation, at trial, Jane stated that "[t]here was no physical relationship at all after about eight  well, I would say after about eight to ten months after he came back, there was no sexual or physical relationship at all." Testimony at trial also reflected the fact that Jane had related Robert's impotency to Kolb's Grand Cleaners employees while she and Robert were living together. Robert confirmed the impotency, testifying on direct examination that he was impotent for the last eighteen months to two years that he lived with Jane.
Robert and Jane separated for the final time in October, 1989, and Jane hired private investigators to watch Robert. On January 26, 1990, Jane filed her "COMPLAINT" for divorce. Later, in May of 1990, while separated from Robert, Jane confronted Robert with her suspicions that he was having a relationship with a woman named Beverly Vaught. Robert confirmed that he was in love with Beverly Vaught, but denied that he had engaged in sexual relations with her.
In her "COMPLAINT" for divorce, Jane alleged that she was entitled to a divorce on numerous grounds, including adultery, habitual cruel and inhuman treatment, habitual drunkenness, and irreconcilable differences. Robert responded, denying the substantive portions of the allegations, with one notable exception; Robert admitted that the parties had experienced severe difficulties in the marital relationship and that a divorce on the grounds of irreconcilable differences was appropriate.
In his response, Robert made a counter-complaint for divorce from Jane. There, he incorporated the aforementioned admission regarding irreconcilable differences, but alleged that he was entitled to a divorce from Jane only on the ground of habitual cruel and inhuman treatment.
Testimony and evidence was presented at trial on August 26, 1991, December 9, 1991, December 10, 1991, February 24, 1992, and February 25, 1992. Thereafter, on June 2, 1992, the chancellor rendered a one-page "OPINION" which adopted the "FINDINGS OF FACT AND CONCLUSIONS OF LAW" of the Plaintiff, Jane, as those of the lower court.
Finally, on October 20, 1992, the chancellor executed and entered his "JUDGMENT OF DIVORCE." That Judgment incorporated the June 2, 1992, "OPINION" and "FINDINGS OF FACT AND CONCLUSIONS OF LAW." In that "JUDGMENT OF DIVORCE," the chancellor dismissed Robert's counterclaim for divorce, and granted Jane a divorce from Robert on the grounds of uncondoned adultery, stating that, "Jane Gunter Brooks proved by a preponderance of the credible evidence that Robert T. Brooks is guilty of uncondoned adultery... ." The Judgment also awarded Jane periodic alimony, lump-sum alimony, litigation costs, and divided the couple's marital property.
Robert filed a "NOTICE OF APPEAL" on December 11, 1992. The issues raised on appeal by Robert are quoted as follows:
A. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S DIVORCE ON THE GROUNDS OF UNCONDONED ADULTERY.
(1) IN THAT THE LOWER COURT ERRED IN GRANTING PLAINTIFF A DIVORCE FROM THE DEFENDANT, IT LIKEWISE, ERRED IN ORDERING DEFENDANT TO PAY PLAINTIFF'S ATTORNEYS' FEES.

*1116 (2) IN THAT THE LOWER COURT ERRED IN GRANTING PLAINTIFF A DIVORCE FROM THE DEFENDANT, IT LIKEWISE, ERRED IN ORDERING DEFENDANT TO PAY PLAINTIFF'S ACCOUNTANT'S FEES.
(3) IN THAT THE LOWER COURT ERRED IN GRANTING PLAINTIFF A DIVORCE FROM THE DEFENDANT, IT LIKEWISE, ERRED IN ORDERING DEFENDANT TO PAY COSTS OF COURT.
B. THE TRIAL COURT ERRED IN DIVESTING DEFENDANT OF INDIVIDUALLY OWNED PROPERTY.
C. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF THE SUM OF $7,200.00 PER MONTH IN ALIMONY AND ORDERING DEFENDANT TO PURCHASE PLAINTIFF A $47,000.00 AUTOMOBILE.
D. THE TRIAL COURT ERRED IN FAILING TO AWARDING [sic] DEFENDANT A DIVORCE FROM PLAINTIFF ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.

II.
THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S DIVORCE ON THE GROUNDS OF UNCONDONED ADULTERY.

A.
In the case of McAdory v. McAdory, 608 So.2d 695 (Miss. 1992), this Court reiterated the proof necessary to support adultery as grounds for a divorce. There, we stated that:
A charge of adultery may be grounds for divorce upon a showing of either an infatuation for a particular person of the opposite sex or a generally adulterous nature on the part of the defendant. Owen v. Gerity, 422 So.2d 284, 287 [sic]. Proof of either of these elements must be supported by evidence of a reasonable opportunity to satisfy the infatuation or proclivity before divorce on grounds of adultery will be granted. Id.

McAdory, 608 So.2d at 700. And, an earlier case from this Court summarized the necessary evidentiary standard to be applied to a litigant's proof of adulterous activity, as follows:
In Mississippi one seeking a divorce on the grounds of adulterous activity must show by clear and convincing evidence both an adulterous inclination and a reasonable opportunity to satisfy that inclination. Owen v. Gerity, 422 So.2d 284, 287 (Miss. 1982); Magee v. Magee, 320 So.2d 779, 783 (Miss. 1975); Rodgers v. Rodgers, 274 So.2d 671, 673 (Miss. 1973). Where the plaintiff relies on circumstantial evidence as proof for his allegations, he or she retains the burden of presenting satisfactory evidence sufficient to lead the trier of fact to a conclusion of guilt. Rodgers, 274 So.2d at 673. However, such evidence need not prove the alleged acts beyond a reasonable doubt and the plaintiff is not required to present direct testimony as to the events complained of due to their secretive nature. Bunkley & Morse's Amis, Divorce & Separation in Mississippi, § 3.09(5) (1957). Nevertheless, the burden of proof is a heavy one in such cases because the evidence must be logical, tend to prove the facts charged, and be inconsistent with a reasonable theory of innocence. Owen, 422 So.2d at 287, citing and quoting Banks v. Banks, 118 Miss. 783, 79 So. 841 (Miss. 1918).
Dillon v. Dillon, 498 So.2d 328, 330 (Miss. 1986) (emphasis added).
In his "JUDGMENT OF DIVORCE," the chancellor erroneously evaluated the evidence of adultery under an incorrect quantum of proof for adultery. Instead of finding proof of adultery by "clear and convincing evidence," Dillon, 498 So.2d at 330, the chancellor found proof of adultery by the lesser standard of a "preponderance of the evidence." In his "JUDGMENT OF DIVORCE," the chancellor found, inter alia, that:
Jane Gunter Brooks proved by a preponderance of the credible evidence that Robert T. Brooks is guilty of uncondoned *1117 adultery prior to the final separation of the parties and subsequent to the final separation of the parties. Jane Gunter Brooks is entitled to a divorce on the statutory grounds of uncondoned adultery.
Furthermore, the "JUDGMENT OF DIVORCE" attached and incorporated the "FINDINGS OF FACTS AND CONCLUSIONS OF LAW" that were presented to the lower court by Jane's counsel, and the chancellor made same a part of the Judgment. The language employed by Jane's counsel in drafting the "FINDINGS OF FACT AND CONCLUSIONS OF LAW" also expresses the incorrect legal standard of proof to be applied in proving adultery as grounds for divorce. The "FINDINGS OF FACT AND CONCLUSIONS OF LAW" state, inter alia, that:
Jane Gunter Brooks proved that Mr. Brooks has been guilty of uncondoned adultery through the testimony of Mr. Brooks, Beverly Vaught, Phyllis Herron, Patty Angelle, Kevin Campbell, James Black and Tom Dial. The combined testimony of said witnesses proved by a preponderance of the credible evidence, if not to the extent of clear and convincing evidence, that Mr. Brooks is possessed of an adulterous propensity....
... .
Mrs. Brooks proved adultery against Mr. Brooks by a preponderance of the evidence since the final separation of the parties.
(emphasis added).
Hence, the chancellor erred by applying an incorrect legal standard. That is, the chancellor found that the evidence supporting a finding of adultery, on the part of Robert, was only a "preponderance of the evidence," not the higher quantum of evidence, "clear and convincing evidence," which is required to prove adultery. See Dillon, 498 So.2d at 330 (Miss. 1986).
Where a lower court misperceives the correct legal standard to be applied, the error becomes one of law, and we do not give deference to the findings of the trial court. See Bean v. Broussard, 587 So.2d 908 (Miss. 1991). Instead, this Court reviews questions of law de novo. Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss. 1992). And, after review, if warranted, this Court will reverse the lower court because of an erroneous interpretation or application of the law. Carter v. Taylor, 611 So.2d 874 (Miss. 1992); Bell v. City of Bay St. Louis, 467 So.2d 657 (Miss. 1985).

B.
In a recent case, the appellant challenged the grant of a divorce to the former spouse. There, this Court reiterated the proper standard of review of the findings of fact of the chancellor with regard to allegations of adultery in a divorce action. We stated that:
This Court will not disturb those findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Reversal is permitted only in those cases where the chancellor was manifestly in error in his finding of fact and manifestly abused his discretion. Where the factual findings of the chancellor are supported by substantial credible evidence, they are insulated from disturbance on appellate review.
... .
... .
Furthermore, in cases concerning an allegation of adultery, the chancellor is required to make a finding of fact. Id. [Dillon v. Dillon, 498 So.2d 328 (Miss. 1986)] at 330. "Where chancellors make such findings of fact, this Court has consistently held that their decisions will not be set aside on appeal unless they are manifestly wrong." Id.

McAdory v. McAdory, 608 So.2d 695, 699 (Miss. 1992) (citations omitted).
Under our standard of appellate review, great deference is given to the findings of fact by the chancellor. "Findings of fact made by a chancellor will not be disturbed if this Court finds substantial evidence supporting the factual findings." Lenoir v. Lenoir, 611 So.2d 200, 203 (Miss. 1992) (citing Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983). "[T]his Court will not overturn the chancery court unless its findings were manifestly wrong." Lenoir v. Lenoir, 611 So.2d 200, *1118 203 (Miss. 1992) (citing Nichols v. Tedder, 547 So.2d 766, 781 (Miss. 1989); Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985).
However, in the case sub judice, the chancellor did not make the findings of fact and conclusions of law for the lower court. The chancellor failed to make his own findings of fact and conclusions of law. Here, the chancellor adopted verbatim and by incorporation, the findings of fact and conclusions of law prepared by a litigant's attorney as those of the lower court.
Where the chancellor adopts, verbatim, findings of fact and conclusions of law prepared by a party to the litigation, this Court analyzes such findings with greater care, Omni Bank v. United Southern Bank, 607 So.2d 76, 83 (Miss. 1992), and the evidence is subjected to heightened scrutiny, Matter of Estate of Ford, 552 So.2d 1065, 1068 (Miss. 1989). Because the chancellor erred in adopting the litigant's findings of facts and conclusions of law in the case sub judice, the deference normally afforded a chancellor's findings of fact is lessened. Omni Bank v. United Southern Bank, 607 So.2d 76, 83 (Miss. 1992); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1266 (Miss. 1987).
The chancellor erred by applying an incorrect legal standard, and also by adopting a litigant's findings of fact and conclusions of law. Hence, we do not give deference to the findings of fact and conclusions of law of the lower court. Instead, we review the record de novo. Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss. 1992). See also Omni Bank v. United Southern Bank, 607 So.2d 76 (Miss. 1992); Bean v. Broussard, 587 So.2d 908 (Miss. 1991); Matter of Estate of Ford, 552 So.2d 1065 (Miss. 1989); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259 (Miss. 1987).

C.
According to Jane, Beverly Vaught was Robert's paramour. She testified regarding the numerous gifts given to Beverly Vaught by Robert. Those gifts included jewelry, clothing, groceries, use of Robert's automobiles by Beverly Vaught, and rent paid on behalf of Beverly Vaught by Robert. Robert confirmed that he had given Beverly Vaught most of those gifts, but maintained that his relationship with Beverly Vaught was only one of friendship.
Jane also testified she had hired detectives to place Robert under surveillance, and that she believed that she had enough evidence in 1986 to conclude that Robert had been involved in an adulterous relationship with another woman, Phyllis Herron, from December of 1985 to April of 1986. At trial, when Robert was asked about the alleged relationship with Phyllis Herron which occurred prior to his reconciliation with Jane, he pled the Fifth Amendment and refused to answer. As a consequence, the uncontradicted evidence proffered by Jane was sufficient to satisfy the evidentiary criterion of Dillon v. Dillon, 498 So.2d 328 (Miss. 1986), that requires clear and convincing proof of Robert's adulterous inclinations.
Beverly Vaught testified that she first met Robert on November 19, 1989; that their relationship grew to be one of good friends sharing almost constant companionship; and that their relationship included displays of affection such as touching, kissing, and embracing. However, Beverly Vaught denied that her relationship with Robert included sexual activities.
With regard to his sexual relationship with Beverly Vaught, Robert's testimony at trial was equivocal. He testified that he lived with Beverly Vaught for one month during the spring of 1991, and that he had been nude in her house. He also admitted that he was in love with Beverly Vaught; that he had slept in the same bed with her; and that he had kissed and embraced her. A fortiori, Robert had the necessary "opportunity" to satisfy his adulterous inclinations, as required by Dillon.
Furthermore, Robert's admission is indicative that he had engaged in sexual activity with Beverly Vaught. After Jane confronted Robert with her suspicions of his relationship with Beverly Vaught, Robert told Jane that, before their last separation, "he thought his sexual life was over. But his sex life was better than it had ever been in his life." Nevertheless, at trial, Robert denied that he had sexual relations with Beverly Vaught.
*1119 On appeal, Robert asserts that the following definition of adultery found in Bunkley and Morse's Amis, Divorce and Separation in Mississippi § 309(2) is applicable:
Adultery, as used in the statute, means voluntary sexual intercourse on the part of the husband, with a woman other than his wife, or on the part of the wife, with a man other than her husband. But, the act must be knowingly and consciously done.
Based upon the foregoing definition, Robert contends that he was incapable of sexual intercourse because he was impotent, beginning eighteen (18) months prior to his separation from Jane in October of 1989. According to Robert, because of his alleged impotency, he did not possess the capability to engage in the act of sexual intercourse; therefore, he could not have committed adultery.
Jane argues that the evidence in the record is sufficient to support the grant of a divorce to her on the ground of Robert's uncondoned adultery with Beverly Vaught. We agree.
Furthermore, and more importantly, under our standard of review, we also find that the proof of Robert's uncondoned adultery rises to the requisite level of "clear and convincing evidence."
As far as any sexual relationship with his wife, Robert may have been impotent. The testimony certainly suggests that fact. However, the testimony and other evidence leads to the conclusion that Robert was not impotent with regard to other persons, particularly Beverly Vaught. We find that the evidence in the record satisfies the requirements set forth in Dillon v. Dillon, 498 So.2d 328 (Miss. 1986), and McAdory v. McAdory, 608 So.2d 695 (Miss. 1992), for proving adultery.
"Adultery may be shown by evidence or by admissions and either are sufficient to support a decree of divorce." Jordan v. Jordan, 510 So.2d 131, 132 (Miss. 1987) (citing Oberlin v. Oberlin, 201 Miss. 228, 232, 29 So.2d 82 (1947); Miller v. Miller, 173 Miss. 44, 159 So. 112, 115 (1935)). The record before us contains more than mere accusations by Jane of Robert's adultery, which, standing alone, would not normally be sufficient supporting evidence of adultery as a ground for divorce. See Lewis v. Lewis, 602 So.2d 881 (Miss. 1992).
Accordingly, we find that Robert's admission of sexual activity after he left Jane, combined with his admission that he loved Beverly Vaught, slept with her, lived with her, kissed and embraced her, and the evidence that he showered her with gifts, is sufficiently indicative of a sexual relationship with Beverly Vaught.
Therefore, we affirm the chancellor's grant of a divorce to Jane, finding clear and convincing proof of Robert's uncondoned adultery with Beverly Vaught.

D.
Robert raises three sub-issues under his first assignment of error. Because those parts of the chancellor's decree, ordering Robert to pay the attorney's and accountant's fees of Jane, as well as the costs of court, share common considerations, they are addressed together, infra.
IN THAT THE LOWER COURT ERRED IN GRANTING PLAINTIFF A DIVORCE FROM THE DEFENDANT, IT LIKEWISE, ERRED IN ORDERING DEFENDANT TO PAY PLAINTIFF'S ATTORNEYS' FEES.
IN THAT THE LOWER COURT ERRED IN GRANTING PLAINTIFF A DIVORCE FROM THE DEFENDANT, IT LIKEWISE, ERRED IN ORDERING DEFENDANT TO PAY PLAINTIFF'S ACCOUNTANT'S FEES.
IN THAT THE LOWER COURT ERRED IN GRANTING PLAINTIFF A DIVORCE FROM THE DEFENDANT, IT LIKEWISE, ERRED IN ORDERING DEFENDANT TO PAY COSTS OF COURT.
The chancellor ordered Robert to pay the following costs incurred by Jane as the result of the divorce litigation: 1) Jane's attorney's fees of $27,789.00; 2) Jane's accountant's fees of $1,500.00; and 3) all court costs.
Robert argues that Jane was not entitled to have the chancellor order him to pay the attorney's and accountant's fees because Jane did not meet the necessary burden of proof  she did not prove her financial inability to pay such fees, nor did she prove the reasonableness of the fees. Craft v. Craft, *1120 478 So.2d 258, 265 (Miss. 1985); Trunzler v. Trunzler, 431 So.2d 1115, 1116 (Miss. 1983); McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982). See also Hammett v. Woods, 602 So.2d 825, 830 (Miss. 1992); Dillon v. Dillon, 498 So.2d 328, 331 (Miss. 1986); Ross v. Segrest, 421 So.2d 1234, 1238 (Miss. 1982).
Also, Robert asserts that the same rationale applies to the payment of court costs, citing Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). Robert further contends that, in ordering him to pay Jane's litigation costs, the chancellor was penalizing him and it created a financial hardship in contravention of the prohibition against penalizing a party announced in Lenoir v. Lenoir, 611 So.2d 200 (Miss. 1992).
The award of attorney's fees in a divorce case is generally left to the discretion of the chancellor. Lenoir, 611 So.2d at 204. The award of court costs is likewise entrusted to the sound discretion of the chancellor. Martin, 566 So.2d at 707.
We have previously addressed the propriety of awarding attorney's fees, stating that:
This Court has held that when a party is able to pay attorney's fees, award of attorney's fees is not appropriate. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). However, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, we find no error. Powers v. Powers, 568 So.2d 255 (Miss. 1990).
Hammett v. Woods, 602 So.2d 825, 830 (Miss. 1992).
We have also held that consideration of the relative worth of the parties, standing alone, is insufficient. The record must reflect the requesting spouse's inability to pay his or her own attorney's fees. Benson v. Benson, 608 So.2d 709, 712 (Miss. 1992).
Jane contends that she has made the showing that is required to be made of her before an award of attorney's fees and costs of court are deemed proper. She claims that her testimony, at trial, that she had only about $1,000.00, at that time, is proof that she has insufficient available financial resources to pay those expenses herself. She further claims that Robert's alimony payment of $7,200.00 per month is her only means of sustenance, and that Robert's greater wage-earning capacity, the fact that she derives no direct income from the business assets which she was awarded, and the fact that the $225,000.00 home she was awarded has $85,000.00 in mortgage debt encumbering it, all demonstrate her inability to pay attorney's and accountant's fees, as well as court costs.
However, on appeal, Jane does not allege that she made any showing at trial that the attorney's fees or accountant's fees were reasonable.
Since the fees under consideration should be paid after termination of the divorce proceedings and the chancellor's awards of alimony and property to the parties, a fortiori, the ability to pay the fees under consideration may also be evaluated after the chancellor awards alimony and property to the parties upon remand. If a divorcing spouse is financially capable of paying his or her attorney's fees, an award of attorney's fees is not appropriate. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990); Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss. 1988); Carpenter v. Carpenter, 519 So.2d 891, 895 (Miss. 1988).
Jane did not prove the reasonableness of her legal and accountant's fees, consequently, it was error for the chancellor to require Robert to pay Jane's attorney's fees and accountant's fees, and we reverse on those two sub-issues. However, since we affirm the chancellor's grant of divorce, as discussed supra, we find no error in the chancellor's assessment of the costs of court to Robert.

III.
THE TRIAL COURT ERRED IN DIVESTING DEFENDANT OF INDIVIDUALLY OWNED PROPERTY.
THE TRIAL COURT ERRED IN GRANTING PLAINTIFF THE SUM OF $7,200.00 PER MONTH IN ALIMONY AND ORDERING DEFENDANT TO PURCHASE PLAINTIFF A $47,000.00 AUTOMOBILE.

A.
The equitable distribution of property and awards of alimony comprise the entire *1121 field of financial settlement between parties incident to a divorce. "Where one expands, the other must recede." Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss. 1994) (quoting LaRue v. LaRue, 172 W. Va. 158, 304 S.E.2d 312, 334 (1983) (Neely, J., concurring)). Therefore, the equitable division of property, awards of alimony, whether lump-sum or periodic, and all other obligations imposed upon a payor spouse should all be considered together by the chancellor. Ferguson, 639 So.2d at 929.
Likewise, on appeal to this Court, we consider the totality of the chancellor's awards upon the divorced parties, including the benefit to the payee spouse and the concomitant burden placed upon the payor spouse. Consequently, in the case sub judice we must consider the propriety and amount of the aggregate of the chancellor's awards of: 1) equitable division of property; 2) periodic alimony; and 3) lump-sum alimony.
Our review of a chancellor's award of alimony is well settled. Awards of alimony are within the discretion of the chancellor, Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993) (citing McEachern v. McEachern, 605 So.2d 809, 814 (Miss. 1992)), and the amount of alimony to be awarded is a matter also committed to the discretion of the chancery court because of the chancellor's opportunity to evaluate the equities of the particular situation. Tilley v. Tilley, 610 So.2d 348 (Miss. 1992); Cherry v. Cherry, 593 So.2d 13, 19 (Miss. 1991); Holleman v. Holleman, 527 So.2d 90 (Miss. 1988).
With regard to a division of property, this Court has recognized that the chancery courts of Mississippi have the authority to order an equitable division of jointly accumulated property, regardless of the formal state of title. Hemsley v. Hemsley, 639 So.2d 909, 913 (Miss. 1994); Johnson v. Johnson, 550 So.2d 416, 420 (Miss. 1989); Jones v. Jones, 532 So.2d 574, 579-81 (Miss. 1988).

B.
At trial, Jane submitted a statement of her anticipated monthly expenses. There, she claimed that she would need $8,356.50 per month on which to live. Included in that figure by Jane, was $1,115.00/month for "clubs, social obligations, travel, recreation," $258.00/month for lawn care, $600.00/month for donations, $191.00/month for hair care, $350.00/month for vacation, $250.00/month for dining out, and $420.00/month for entertaining friends. On the other hand, Robert submitted a financial declaration which set his monthly expenses at $3,781.00, plus another $1,820.00 worth of monthly expenses which he was paying on behalf of Jane at that time. Additionally, Robert stated at the trial, that he was willing to provide Jane with monthly alimony and "take care of Mrs. Brooks in a reasonable manner that I can afford," and that, for the remainder of his life, he intended to pay the $217.00 per month premium on a $100,000.00 life insurance policy on which Jane was the beneficiary.
The chancellor divided property, granted awards to Jane, and imposed obligations upon Robert, as follows:
1) The chancellor granted Jane the marital residence and all furnishings and household goods therein;
2) In addition to the marital home and its contents which the chancellor granted to Jane in its entirety, the chancellor also adjudicated Jane as the owner of fifty percent (50%) of all other marital assets, including Robert's ownership interest in the "corporate stock of Kolb's Grand Cleaners, Inc., and Brooks Engineering, Inc.;"
3) The chancellor ordered Robert to provide Jane with "free and clear ownership of a luxury automobile of her choice with a value of $47,000.00;"
4) The chancellor awarded Jane, and ordered Robert to pay, periodic alimony in the amount of $7,200.00 per month, until Jane's death or remarriage;
5) The chancellor ordered Robert to pay Jane the sum of $27,989.00 as compensation for her attorney's services and the sum of $1,500.00 as compensation for the services of her accountant;
6) The chancellor adjudicated Jane to be the owner of insurance policies, and ordered *1122 Robert to pay the premiums and to "maintain all existing policies of life insurance inuring to the benefit of Jane Gunter Brooks which were provided for her benefit during the course of the marriage, and prior to the final separation of the parties;"
7) The chancellor ordered Robert to "maintain good and adequate major medical insurance coverage inuring to the benefit of Jane Gunter Brooks," and to pay all premiums as they come due; and
8) The chancellor assessed Robert with all court costs.
The chancellor awarded Jane substantial lump-sum alimony, plus more than 50% of the couple's assets, approaching 75% of the total assets. Simultaneously, the chancellor ordered Robert to pay Jane periodic alimony of $7,200.00 per month, an amount that exceeded Robert's monthly net take-home pay, as well as his monthly gross income. On appeal, Robert argues that the chancellor's awards of alimony to Jane and the concomitant burden placed upon him are unfair. We agree.

C.
We have often addressed the issue of the propriety, vel non, of an award of periodic alimony. In one case, this Court announced the touchstone which should guide a chancellor when awarding alimony, stating:
Alimony, if allowed, should be reasonable in amount, first deducting the resources of the wife and then finding an amount commensurate with the wife's accustomed standard of living, and considering the ability of the husband to pay. As long as the chancellor follows this general standard, the amount is largely within his discretion. Wood v. Wood, 495 So.2d 503, 506 (Miss. 1986); Miss. Code Ann. § 93-5-23 (Supp. 1989). The chancellor should consider the reasonable needs of the wife and the right of the husband to lead as normal a life as possible with a decent standard of living. Massey v. Massey, 475 So.2d 802, 803 (Miss. 1985).
Brendel v. Brendel, 566 So.2d 1269, 1272 (Miss. 1990).
It is readily apparent from the facts of the case sub judice, that the chancellor abrogated this general guideline when he ordered Robert to pay Jane periodic alimony which exceeded Robert's income  per se unreasonable.
In another case, we enumerated factors which we examine upon review:
This Court has long considered nine areas when reviewing an award or denial of periodic alimony:
(1) the health of the husband and his earning capacity;
(2) the health of the wife and her earning capacity;
(3) the entire sources of income of both parties;
(4) the reasonable needs of the wife;
(5) the reasonable needs of the child;
(6) the necessary living expenses of the husband;
(7) the estimated amount of income taxes the respective parties must pay on their incomes;
(8) the fact that the wife has the free use of the home, furnishings, and automobile, and;
(9) such other facts and circumstances bearing on the subject that might be shown by evidence.
Tilley v. Tilley, 610 So.2d 348, 353 (Miss. 1992) (citing Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 152 (1955); Powers v. Powers, 568 So.2d 255, 259 (Miss. 1990)).
In Tilley, we indicated the necessity of considering the benefits to the payee spouse and the obligations imposed upon the payor spouse by the chancellor's judgment, prior to review of the aforementioned nine factors. Tilley, 610 So.2d at 353. Observing that guideline, the nine factors from Tilley are considered in order, infra:
(1) The health of the husband and his earning capacity.
Robert is in his late fifties and, other than alleged impotency, he testified that he has no major health problems. But, his earning capacity is not as bright as painted by Jane. Robert has few skills; he has never *1123 done anything other than work in the family-owned cleaning business. He has drawn a good salary from that business; however, after the chancellor's divorce decree, he only owns 25% of Kolb's, his wife now owns 25%, and his brother owns the remaining 50%. Such minority ownership (25%) is not the definition of job security in a closely held corporation. Other than the possibility of continuing to draw a salary from Kolb's, Robert's employability is severely limited.
(2) The health of the wife and her earning capacity.
Jane is also in her late fifties, and she does not suffer from any major health problems. Her earning potential is more limited than Robert's when considering the dollar amount of salary drawn by Robert in the past. However, her skills are more marketable than Robert's in the sense of employability or marketability. Jane's background is accounting, having been a bookkeeper in the early years of the couple's marriage. Although a bookkeeper wouldn't earn the salary which Robert has heretofore earned, it would be much easier for Jane to find a job as a bookkeeper than it would be for Robert to find a job running a cleaning business.
(3) The entire sources of income of both parties.
Jane contends that she has no job and no income; therefore, she is totally dependent on alimony from Robert for her sustenance. The chancellor ordered Robert to pay $7,200.00 per months to Jane as periodic alimony. Those monthly payments calculate to $86,400.00 annually ($7,200.00 x 12 = $86,400.00). However, Robert's annual gross income, before taxes, is only $85,200.00, which calculates to $7,100.00 per month. Of that amount, Robert's net monthly take-home pay is approximately $5,159.00. Consequently, since Robert was ordered to pay Jane periodic alimony of $7,200.00, the periodic alimony exceeds Robert's monthly net take-home pay by $2,041.00 per month, and also surpasses Robert's monthly gross income by $100.00 per month. The chancellor's award of periodic alimony to Jane, on an annual basis, is $24,492.00 greater than Robert's take-home pay. Such a situation is violative of the general guideline of Brendel, and hardly reflects the principle of equity.
(4) The reasonable needs of the wife.
As mentioned earlier, at trial, Jane contended that she would need $8,356.50 per month on which to live. Included in that figure was $1,115.00/month for "clubs, social obligations, travel, recreation," $258.00/month for lawn care, $600.00/month for donations, $191.00/month for hair care, $350.00/month for vacation, $250.00/month for dining out, and $420.00/month for entertaining friends. That Jane's listed expenses are excessive should go without further comment.
(5) The reasonable needs of the child.
There were no children born of this marriage.
(6) The necessary living expenses of the husband.
Robert's expenses at the time of trial were approximately $4,000.00 per month.
(7) The estimated amount of income taxes the respective parties must pay on their incomes.
The tax implications are not evident from the record.
(8) The fact that the wife has the free use of the home, furnishings and automobile.
The chancellor not only awarded Jane free use of the marital home, he awarded her total ownership of the $225,000.00 marital home and all the contents therein. As for an automobile, the chancellor ordered Robert to provide Jane a $47,000.00 luxury automobile of her choice, free and clear of all liens or encumbrances.
(9) Such other facts and circumstances bearing on the subject that might be shown by evidence.
The chancellor also awarded Jane 50% of all the remaining marital property, including Robert's stock in Kolb's cleaners and his interest in Brook's Engineering. Consequently, *1124 considering the totality of the awards, the chancellor placed Jane in a better financial position than Robert.
In order to achieve equitable and fair results incident to a divorce, awards of alimony and any division of property should be considered together by a chancellor. We have unequivocally stated that proposition, as follows:

All property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together... .
... .

In the final analysis, all awards should be considered together to determine that they are equitable and fair.

Ferguson v. Ferguson, 639 So.2d at 929 (Miss. 1994). (Emphasis added).
Upon review, in observance of the aforementioned Ferguson standard, we continue to respect the guideline of Brendel which requires us to consider all the awards to the payee spouse and the concomitant burden placed upon the payor spouse. In the case sub judice, Robert's take-home pay is approximately $5,159.00 per month. Yet, the chancellor awarded Jane $7,200.00 per month periodic alimony, lump-sum alimony in the form of a $47,000.00 luxury automobile of her choice, and a division of property resulting in greater than 50% of all assets, including half of Robert's ownership in the Kolb's business and the entirety of the $225,000.00 marital home and all of its contents, awarded in favor of Jane.
Considering the totality of the chancellor's awards, this Court cannot say that the overall results of the chancellor's decisions were equitable and fair.

IV.
THE TRIAL COURT ERRED IN FAILING TO AWARD DEFENDANT A DIVORCE FROM PLAINTIFF ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.
In years gone by, this Court has consistently held that habitual cruel and inhuman treatment could be established only by a continuing course of conduct on the part of the offending spouse which was so unkind, unfeeling or brutal as to endanger, or put one in reasonable apprehension of danger to life, limb or health, and further, that such course of conduct must be habitual, that is, done so often, or continued so long that it may be reasonably be said a permanent condition.
Wilson v. Wilson, 547 So.2d 803, 805 (Miss. 1989).
Robert's counter-complaint for a divorce from Jane on the grounds of habitual cruel and inhuman treatment was dismissed by the chancellor. On appeal, Robert does not contend that he meets the aforementioned standard; he does not claim that he had a reasonable apprehension of danger to life, limb, or health, much less that it was often or continuous. The best that Robert can argue is that Jane was not congenial towards him. Our cases require more than mere unkindness, rudeness, or incompatibility to support the granting of a divorce on the ground of "cruel and inhuman treatment." Wires v. Wires, 297 So.2d 900 (Miss. 1974); Burnett v. Burnett, 271 So.2d 90 (Miss. 1972).
Accordingly, this assignment of error is without merit. It is merely an attempt by Robert to renew his request for a divorce by substantively couching it in terms of irreconcilable differences.

V.
Under our standard of appellate review, great deference is given to the findings of fact by the chancellor. "Findings of fact made by a chancellor will not be disturbed if this Court finds substantial evidence supporting the factual findings." Lenoir v. Lenoir, 611 So.2d 200, 203 (Miss. 1992) (citing Tedford v. Dempsey, 437 So.2d 410, 417 (Miss. 1983)).
In the case sub judice, the chancellor did not make the findings of fact and conclusions of law for the lower court. Instead, the chancellor adopted, verbatim and by incorporation, the findings of fact and conclusions of law prepared by an attorney for one of the litigants as those of the lower court. The chancellor also erred by applying an incorrect *1125 legal standard. Hence, we do not give deference to the findings of fact and conclusions of law of the lower court. Instead, we review the record de novo. Bank of Mississippi v. Hollingsworth, 609 So.2d 422, 424 (Miss. 1992). See also Omni Bank v. United Southern Bank, 607 So.2d 76 (Miss. 1992); Bean v. Broussard, 587 So.2d 908 (Miss. 1991); Matter of Estate of Ford, 552 So.2d 1065 (Miss. 1989); Rice Researchers, Inc. v. Hiter, 512 So.2d 1259 (Miss. 1987).
It is quite evident from the language employed in the chancellor's "JUDGMENT OF DIVORCE" that he reviewed the proof of adultery under the "preponderance of the credible evidence" standard. However, that is not the correct standard to apply. A greater quantum of proof, proof that is "clear and convincing" is necessary to prove adultery as a ground for divorce. Nevertheless, upon review, we find clear and convincing evidence which substantiates Jane's charge of adultery by Robert as a ground for divorce. Therefore, we affirm the chancellor's grant of divorce to Jane from Robert.
However, the chancellor's awards to Jane and resulting burden upon Robert yielded a wholly inequitable result. The chancellor awarded Jane ownership of the $225,000.00 marital home and all of its contents, 50% of all other marital property, including Robert's business ownership, a $47,000.00 luxury automobile of her choice, periodic alimony of $7,200.00 per month, and litigation costs of over $29,000.00.
Here, the periodic alimony awarded to Jane not only exceeded Robert's net income by $24,492.00 annually, it exceeded his gross income. Consequently, we reverse the awards of alimony and division of property and remand for consideration and application of the Ferguson factors, supra.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE and SMITH, JJ., concur.
JAMES L. ROBERTS, Jr., J., concurs with separate written opinion joined by HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ.
JAMES L. ROBERTS, Jr., Justice, concurring:
I concur with the majority's well-written opinion. However, I take this opportunity to clarify a point of chancery practice and procedure regarding a chancellor's adoption of submitted proposed findings of fact by a party.
It is the present state of the law in Mississippi pursuant to Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss. 1987), that a chancellor's verbatim adoption of a party's submitted proposed findings of fact is not prohibited when supported by substantial evidence presented during the trial. Nevertheless, the Mississippi Supreme Court will view the adopted facts with a more critical eye. Id. However, this should not be construed to mean that in the event a party prior to trial submits proposed findings of fact to the chancellor which are subsequently supported by substantial evidence introduced during the trial and adopted verbatim by the chancellor, that the chancellor is in error by doing so.
I am aware of the time constraints placed upon the chancellors in Mississippi. Therefore, I believe a chancellor who adopts verbatim proposed findings of fact, when supported by substantial evidence, should not be held to be in error and certainly not in manifest error.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., join this opinion.