820 So.2d 747 (2002)
Richard B. PASSMORE, Appellant,
v.
Amy R. PASSMORE, Appellee.
No. 2001-CA-00016-COA.
Court of Appeals of Mississippi.
June 25, 2002.
*748 Stephen Travis Bailey, Tupelo, attorney for appellant.
John A. Ferrell, Jackson, attorney for appellee.
Before KING, P.J., BRIDGES, and CHANDLER, JJ.
CHANDLER, J., for the court.
This appeal arises from a divorce action decided by the Lee County Chancery Court, wherein the court granted Amy Passmore and Richard Passmore a divorce on the grounds of irreconcilable differences. The parties agreed to submit several issues to the court, including the determination of which parent should receive primary custody of the two children born during the marriage. The chancellor granted Amy custody of both children, finding that most of the factors enunciated in Albright v. Albright, 437 So.2d 1003 *749 (Miss.1983), weighed in her favor. Richard appeals the chancellor's decision to award Amy custody of both children, arguing that the chancellor applied several erroneous legal standards in her application of the Albright factors. Finding no error, we affirm.

FACTS
¶ 2. Amy and Richard were married on May 21, 1994. On August 21, 1997, Amy gave birth to their first child, Logan Passmore. Approximately a year and one-half later Amy gave birth to their second child, Kaitlyn Passmore. The parties were granted a divorce on November 28, 2000.
¶ 3. During the course of the trial, the parties clashed over the issue of custody of the minor children and presented a considerable amount of evidence and several witnesses on the subject of which parent was better fit to raise the children. Richard testified that Amy had continuously struggled with severe depression; it is undisputed that Amy tried to commit suicide following the birth their second child. Moreover, Richard asserted that Amy frequently developed debilitating migraine headaches, requiring the use of potent sedatives that made it impractical for her to care for the children. In response to Richard's contentions, Amy argued that her depression subsided after her failed suicide attempt. Likewise, she demonstrated that she regularly attends therapy and takes antidepressive medication. These assertions were corroborated by the testimony of three psychiatrists; each doctor concluded that Amy's depression would not have a deleterious effect on the children. Additionally, Amy demonstrated that Richard also experienced signs of mental instability. Richard testified that he took medications similar to those used by Amy for his anxiety as well as his volatile temper.
¶ 4. At Richard's request, the chancellor appointed a guardian ad litem in order to make a recommendation as to which parent should retain primary custody over the children. The guardian ad litem admitted the decision was a close call; however, he concluded that Richard should be granted primary custody, noting that Amy's depression would likely have an adverse impact on the children. Nonetheless, despite the guardian ad litem's recommendations, the chancellor gave more weight to Amy's three medical experts and concluded that Amy's prior depressive states did not detract from her present and future ability to care for the children. At the conclusion of the trial, the chancellor determined that Amy should be granted primary custody of the child.

LAW AND ANALYSIS
¶ 5. The standard of review in child custody cases is limited; the chancellor must either commit manifest error, act in a way that is clearly erroneous, or apply an erroneous legal standard before this Court can reverse. M.C.M.J. v. C.E.J., 715 So.2d 774, 776(¶ 10) (Miss.1998). This Court will not reverse the chancellor's findings unless it is demonstrated that the decision was not supported by substantial, credible evidence. Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss.1986).
¶ 6. In cases pertaining to the custody of a minor child, the paramount consideration is the best interest of the child. Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994). In deciding which parent can best further the child's interest, our courts weigh the following factors: (1) age, health and sex of the child; (2) a determination of the parent that has had the continuity of care prior to the separation; (3) which has the best parenting skills and which has the willingness and capacity to provide primary child care; (4) the employment of *750 the parent and responsibilities of that employment; (5) physical and mental health and age of the parents; (6) emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship. Albright, 437 So.2d at 1005. However, "[w]hile the Albright factors are extremely helpful in navigating what is usually a labyrinth of interests and emotions, they are certainly not the equivalent of a mathematical formula. Determining custody of a child is not an exact science." Lee v. Lee, 798 So.2d 1284, 1288(¶ 15) (Miss.2001).
¶ 7. The Mississippi Supreme Court has held that a chancellor must apply the Albright factors in all child custody cases; furthermore, he or she must do an on-the-record analysis of each one of the factors. Powell v. Ayars, 792 So.2d 240, 244(¶ 8) (Miss.2001). The failure to do so is reversible error. Id. In the case sub judice, the chancellor made on-the-record findings for each Albright factor, weighing the concerns of both parties. Nonetheless, Richard asserts that the chancellor committed reversible error by not finding that the following factors weighed in his favor: (1) the age, sex and health of the children; (2) the stability of the parties' home environment; (3) the physical and mental health of the parties (4) the continuity of care of the children; (5) the parenting skills of the parents; and (6) the moral fitness of the parties.

(1) AGE, SEX AND HEALTH OF THE CHILDREN

¶ 8. Richard argues that the chancellor committed reversible error when she applied the tender years doctrine and determined that the ages of the two children slightly favored granting custody to Amy. Richard contends that section 93-5-24(7) of the Mississippi Code specifically orders that chancellors shall not apply the tender years doctrine.
¶ 9. Section 93-5-24(7) states that "[t]here shall be no presumption that it is in the best interest of a child that a mother be awarded either legal or physical custody." Miss.Code Ann. § 93-5-24(7) (Supp. 2001). However, while section 93-5-24(7) significantly weakens the tender years doctrine, "there is still a presumption that a mother is generally better suited to raise a young child." Hollon v. Hollon, 784 So.2d 943, 947(¶ 14) (Miss.2001). In essence, while the father no longer has to prove the mother unfit to rebut the automatic application of the tender years presumption, our courts have determined that along with the rest of the Albright factors, the tender years doctrine is "a factor worthy of weight in determining the best interest of a child." Id. at 947 n. 2. See also Lee, 798 So.2d at 1289(¶ 12) (noting that "the age and sex of a child are merely factors to be considered under Albright").
¶ 10. In the present case, the chancellor recognized that the tender years doctrine had been weakened through case law over the years. Regardless, the chancellor concluded that the age and sex of the children should be considered as factors under Albright. Contrary to Richard's argument, the chancellor did not require him to prove Amy unfit in order to rebut the tender years presumption. Instead, the chancellor, admitting the limited application of the tender years doctrine, conformed her analysis to the procedures set out by the appellate courts of this state. See Sobieske v. Preslar, 755 So.2d 410, 413(¶ 10) (Miss.2000); Dearman v. Dearman, 811 So.2d 308, 311(¶ 8) (Miss.Ct. *751 App.2001). As such, we find the chancellor did not abuse her discretion.

(2) STABILITY OF HOME ENVIRONMENT

¶ 11. Under this heading, the chancellor noted that Richard had maintained the same job while Amy changed jobs several times during the course of the marriage. Furthermore, when Amy suffered the mental breakdown in September 1999, Richard provided stability for the home and children. According to Richard, Amy's absence during this time period should have lead the chancellor to conclude that Richard was primarily responsible for the home's stability. The record reflects that the chancellor not only considered the care and stability that Richard provided during Amy's hospitalization, but commended his actions as well. However, instead of finding this factor in Richard's favor, the chancellor reasoned that stability must be weighed in respect to the period of time encompassing the entire lives of the children. The chancellor concluded that this factor favored neither parent.

(3) PHYSICAL AND MENTAL HEALTH AND AGE OF THE PARTIES

¶ 12. The record indicates that both parties suffered from some form of mental impairment during the course of the marriage; however, it is clear that, as a matter of degree, Amy's bouts with depression and migraine headaches were probably more serious and debilitating than the anxiety suffered by Richard. Nonetheless, in weighing the effects of these diseases, the chancellor noted that three medical professionals, including two psychiatrists, testified that Amy's mental infirmities had subsided due in part to constant counseling and the right combination of medications. Accordingly, both psychiatrists concluded that Amy was no longer a threat to herself or her children and was emotionally capable of providing the primary care, custody and control to her children.
¶ 13. Richard contends that the chancellor was required to detail the reasons for rejecting the guardian ad litem's recommendation that, due to Amy's past mental illness, Richard should be granted primary custody of the children. In support of this proposition, Richard relies on S.N.C. and J.H.C. v. J.R.D., Jr., 755 So.2d 1077 (Miss.2000). However, a close read of S.N.C and J.H.C. reveals that our supreme court determined that "there is no requirement that the chancellor defer to the findings of the guardian ad litem.... Such a rule would intrude on the authority of the chancellor to make findings of fact and apply the law to those facts." S.N.C. and J.H.C., 755 So.2d at 1082(¶ 17). Moreover, the court held that the chancellor is required to state his or her reasons for not accepting the recommendations of the guardian ad litem only in cases where the appointment of the guardian ad litem is obligatory. Id. at 1082(¶ 18). As the record before us shows, the guardian ad litem was not mandated by statute but was one appointed at the request of Richard prior to the trial. Therefore, this argument is without merit.

(4) PARENTING SKILLS

¶ 14. The chancellor found that both parents were willing to provide primary care to the children. Despite this finding, the chancellor concluded that this factor slightly favored Amy. Each of Amy's witnesses testified as to the love and care she provided to both children. Likewise, while several of Richard's relatives testified in his favor, there was testimony that he regularly consumed alcohol in front of the children and failed to erect fences as to prevent them from wandering *752 into a swimming pool. While it is true that Amy had exhibited behavior in the past that did not comport with the traditional notions of good parenting skills, including an attempted suicide and the temporary use of alcohol and prescription drugs as sleeping aids, the chancellor concluded that, given the totality of the circumstances, Amy exhibited better parenting skills.

(5) CONTINUITY OF CARE OF THE CHILDREN

¶ 15. In September 1999, the time that Amy was hospitalized after her suicide attempt, Richard had the primary care of the children. However, during this time Amy's parents and other relatives assisted Richard in caring for the two children. The record reflects that, with this brief exception, Amy was the primary caregiver. During trial, several of Amy's relatives testified that Amy had consistently provided for the care of her children. Likewise, the guardian ad litem concluded that this Albright factor favored Amy. The chancellor acknowledged that several of Richard's relatives testified that he was the primary caregiver; however, the chancellor distinguished this testimony, noting that Richard's relatives, unlike Amy's relatives, lived outside of Mississippi and were unable to closely observe the care provided by each parent.

(6) MORAL FITNESS OF THE PARTIES

¶ 16. The chancellor found that Amy had participated in an adulterous affair with a co-worker she had known for only a couple of weeks. However, this affair occurred well after the time Richard petitioned for divorce and while the children were in Richard's custody. Our supreme court has explicitly stated that sexual misconduct is not per se grounds for denial of custody. Hollon v. Hollon, 784 So.2d 943, 949(¶ 25) (Miss.2001). The chancellor also recognized that the moral fitness of Richard had been questioned throughout the trial, including the possibility that he had been involved in an adulterous affair, excessive drinking, and a loss of temper on more than one occasion. The chancellor concluded that this factor favored neither party.

CONCLUSION
¶ 17. It is clear from the evidence and record before this Court, in addition to the specific findings made by the chancellor, that the chancellor's decision to grant Amy primary custody of the children was supported by substantial, credible evidence. Therefore, bearing in mind our highly deferential standard of review, this Court affirms the chancellor's ruling.
¶ 18. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS AFFIRMED. COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND BRANTLEY, JJ., CONCUR.