914 So.2d 300 (2005)
Mark BALIUS, Appellant
v.
Melanie GAINES and Jared Evan Balius, a minor, by and through his next friend, Melanie Gaines, Appellees.
No. 2004-CA-01039-COA.
Court of Appeals of Mississippi.
November 1, 2005.
*303 David Clifton Morrison, attorney for appellant.
David R. Daniels, attorney for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
*302 ISHEE, J., for the Court.
¶ 1. Mark Balius (Balius), father of the minor child, Jared Evan Balius (Jared), filed numerous motions for contempt and custody modification against the child's mother, Melanie Gaines ("Gaines"). In response to these motions, Gaines filed a motion for sanctions. After a trial, the Chancery Court of Harrison County entered a judgment that, among other holdings, denied all of the motions filed by Balius and granted the motion for sanctions filed by Gaines. Aggrieved by the judgment, Balius filed a timely notice of appeal. He now raises eight assignments of error. Finding no error, we affirm the judgment of the Chancery Court of Harrison County.

FACTS
¶ 2. On June 13, 2000, an agreed judgment of paternity established that Balius was the father of Jared, a child born out of wedlock to Gaines on February 19, 1999. The judgment awarded joint legal custody of Jared to the parties. Physical custody was awarded to Gaines, with Balius receiving liberal visitation. Balius was ordered to pay child support and to pay for Jared's health insurance upon expiration of the current policy.
¶ 3. Unfortunately, Balius and Gaines were unable to carry out the terms of the agreed judgment in a cooperative manner. The case at bar marks the second appeal brought to this Court by Balius, involving similar issues between the parties: custody of the parties' child, contempt, and sanctions. The first wave of litigation between the parties began with a motion filed by Balius on September 7, 2000, requesting a modification of the visitation provision and a citation of contempt against Gaines. Numerous motions were filed by both parties, and due to their contentious behavior, the trial court suspended proceedings and ordered the parties to undergo counseling for co-parenting skills. The Chancery Court of Harrison County entered two judgments as a result of this litigation. The first judgment, entered on May 28, 2002, denied Balius's motions to modify custody and child support, granted a modification of visitation, ordered Balius to pay child support, and imposed sanctions in the amount of $1,500 against Balius, and $500 against Balius's attorney, David Clifton Morrison. The second judgment, entered on July 17, 2003, nunc pro tunc to June 2, 2003, denied various post-trial motions filed by Balius and clarified and modified the visitation provision of the May 28 judgment, as requested by Gaines. Balius appealed these judgments. This Court found each of Balius's thirteen assignments of error to be without merit and affirmed the judgment of the chancery court. Balius v. Gaines, 908 So.2d 791 (Miss.Ct.App.2005).
¶ 4. Following the chancery court's judgment on July 17, Balius called four previously filed motions for hearing in the court below. On November 12, 2003, Balius filed a motion for an order appointing a guardian ad litem, and the chancery court granted the motion the following day. The trial was held on November 17.
¶ 5. During trial, the chancery court addressed four motions filed by Balius, and one by Gaines. The first of these motions, filed by Balius on December 27, 2002, petitioned for physical and legal custody of Jared. Balius also requested that Gaines be cited for criminal and civil contempt, alleging that Gaines purposefully interfered *304 with visitation between Balius and Jared on Father's Day and Christmas of 2002. The trial court also considered a motion for contempt, sanctions, and change of custody, filed by Balius on February 18, 2003. This motion alleged that Gaines acted in "wilful and contumacious contempt" for her failure to turn Jared over to Balius for visitation on February 16, 2003. The third motion considered by the trial court was a motion for contempt, filed by Balius on April 16, 2003. Balius argued that Gaines continued to prohibit him from exercising his court-ordered visitation, and that as a result, he had not seen his son since Christmas 2002. The trial court also addressed a motion for temporary and permanent change in custody, filed by Balius on May 30, 2003. This motion alleged that Gaines continued to interfere with visitation, specifically during Easter 2003. In response to Balius' numerous petitions, Gaines filed a motion for sanctions on July 25, 2003. Gaines' requested that the court order Balius to pay attorney's fees in the amount of $7,000 and that he post a bond in the amount of $5,000 to ensure future good conduct.
¶ 6. On January 16, 2004, the chancery court entered a judgment denying the relief sought by Balius and granting Gaines' motion for sanctions. The court found that it was the intent of Balius to oppress Gaines financially and granted Gaines' motion for sanctions to the extent that Balius was ordered to pay $7,464.34 to Gaines for attorney's fees, travel costs, lost days of employment, and medical expenses and insurance costs for Jared. Balius file a motion for reconsideration. After a hearing on the motion, the chancery court entered an amended judgment on April 30, 2004. The amended judgment differed from the original judgment in only a few notable ways. First, the court removed a discussion of Balius's involvement with recusal of the original trial judge, as well as a sentence noting that Balius filed a complaint with the State Bar Association against opposing counsel. Also removed from the judgment was a description of the failed counseling and parenting classes, and the failed conferences with the court. The amended judgment further excluded a provision dealing with visitation on Jared's birthday and a provision subordinating all visitation to the school schedule of the child. Finally, the amended judgment excluded the court's warning to Balius that further misconduct may result in incarceration. Balius appealed the amended judgment, and he now asserts eight assignments of error.

ISSUES AND ANALYSIS

I. Whether the trial court was manifestly wrong, clearly erroneous, an erroneous legal standard was applied or abused its discretion in allowing counsel for Gaines to author the order without including the guardian ad litem or counsel for Balius.
¶ 7. Balius argues that the court "blindly adopted" the findings of fact and conclusions of law presented to it by counsel for Gaines. Consequently, Balius argues that the findings of the court below were not the findings of the court, but the findings of the prevailing party, and he insists that this Court must afford less deference to the chancellor's judgment, as the court did in Brooks v. Brooks, 652 So.2d 1113, 1113 (Miss.1995).
¶ 8. This Court has long held that the chancellor, as fact-finder, "is entitled to substantial deference when his determinations are subjected to attack on appeal and appellate review searches only for an abuse of discretion." Rogers v. Morin, 791 So.2d 815, 826 (¶ 39) (Miss.2001). We review questions of law de novo. Burnett ex *305 rel. Islam v. Burnett, 792 So.2d 1016, 1019 (¶ 6) (Miss.Ct.App.2001). Thus, we will not disturb the decision of the chancery court unless the chancellor's findings were unsupported by substantial evidence and were manifestly wrong or clearly erroneous, or if the chancellor applied an incorrect legal standard. Pearson v. Pearson, 761 So.2d 157, 162 (¶ 14) (Miss.2000). We will, however, afford less deference to the chancellor's findings when the chancellor adopts verbatim or "almost verbatim" one party's findings of fact and conclusions of law. Brooks, 652 So.2d at 1118; Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1265 (Miss.1987).
¶ 9. In the case sub judice, the record shows that the proposed judgment submitted by Gaines's counsel is identical to the original judgment entered by the chancellor on January 16, 2004. This does not, however, necessitate that we give the chancellor's judgment less deference. The problem with adopting verbatim, or almost verbatim, the findings submitted by counsel is that "these findings simply are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the trial testimony and exhibits." Id. at 1265. In Brooks, the court reviewed the record de novo because the chancellor did not make his own findings and applied an incorrect legal standard. Brooks, 652 So.2d at 1118.
¶ 10. Unlike in Brooks and Rice Researchers, however, the chancellor in this case did make his own findings at the close of trial, and he explained those findings in his ruling from the bench. As is common practice in chancery court, the prevailing party was tasked with memorializing the ruling in a proposed judgment. An examination of the proposed judgment and of the chancellor's bench ruling reveals that the proposed judgment includes each of the findings given by the chancellor from the bench. Moreover, the proposed judgment included much of the chancellor's precise wording from his bench ruling, such as referring to Balius's pleadings as "baseless" and describing Balius as "confused and angry." Thus, the instant case is distinguishable from Brooks, as we find that the original judgment was not the sole creation of Gaines's counsel, but was a direct reflection, or memorialization, of the chancellor's ruling from the bench. Therefore, we need not give the chancellor's judgment less deference.
¶ 11. Under this assignment of error, Balius further contends that the court erred in not involving counsel for Balius or the guardian ad litem in the drafting of the order. This argument is without merit for several reasons. First, Balius is responsible for his lack of input in the original judgment. The proposed judgment was submitted to the chancellor on December 15, and the original judgment was not entered until nearly one month later. Thus, despite having ample time to do so, Balius neglected to provide the chancellor with a list of the problems he had with the proposed judgment.
¶ 12. This assignment of error is also without merit because, contrary to Balius's contention, Balius and the guardian ad litem did have a voice as to the content of the amended judgment entered on April 30. During the hearing on the motion to reconsider, both Balius and the guardian ad litem expressed their views regarding the substance of the judgment. The chancellor addressed each of the issues brought to his attention, allowed both attorneys to speak on the issues, and made changes at his discretion.
¶ 13. Finally, it is important to note, that in cases such as this one, where the appointment of the guardian ad litem was not mandatory, the chancellor may disregard *306 the recommendation of the guardian ad litem at his discretion. Passmore v. Passmore, 820 So.2d 747, 751 (¶ 13) (Miss. Ct.App.2002). The opinion of a guardian ad litem does not dictate the decision of a chancellor; to hold otherwise would "intrude on the authority of the chancellor to make findings of fact and apply the law to those facts." Id. (quoting S.N.C. and J.H.C. v. J.R.D., Jr., 755 So.2d 1077, 1082 (¶ 17) (Miss.2000)). Here, the guardian ad litem was not appointed until four days before the trial. Furthermore, she did not provide the court with any recommendations to consider. Therefore, Balius's contention that the court erred in allowing counsel for Gaines to draft the judgment without input from the guardian ad litem is without merit.

II. Whether the trial court was manifestly wrong, clearly erroneous, an erroneous legal standard was applied or abused it's discretion in failing to prepare an opinion finding each fact specifically and stating separately the conclusions of law thereon.
¶ 14. In his brief, Balius argues that the chancellor was "required to enter a detailed finding of fact supporting the basis of ... child custody and visitation." However, Rule 4.01 of the Uniform Chancery Court Rules states in pertinent part that, "[i]n all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor shall find the facts specially and state separately his conclusions of law thereon." Balius filed a motion to reconsider within ten days after entry of the judgment.
¶ 15. The amended judgment, as well as the original judgment, consisted of six pages, including eight numbered paragraphs that detail the findings of fact pronounced from the bench. Both judgments included a list of facts supporting the court's decision to deny Balius's contempt motions and to grant the Gaines's motion for sanctions. Among the facts listed to support the court's ruling were the following: the income disparity between the parties, the conduct of Balius evidencing intent on his part to oppress Gaines financially, and that no evidence of contempt by Gaines was produced at the trial. Moreover, both judgments described the source of the monetary sanctions, namely, Gaines attorney's fees, travel costs, lost days of employment, medical expenses and insurance costs for the minor child. Therefore, we find the amended judgment, as well as the original judgment, to be sufficiently detailed in the court's findings and conclusions of law, and we find this issue to be without merit.

III. Whether the court committed manifest error in finding certain issues as fact that were not supported by the evidence.
¶ 16. Balius alleges that the following statement, which was included in both the original and amended judgment, was manifestly erroneous and unsupported by the evidence: "recognizing the income disparity between the parties and finding further that the conduct of [Balius] in this case evidences an intent on his part to oppress [Gaines] financially until she gives in to his demands." To further his argument, Balius includes a statement given by the chancellor during the hearing on the motion to reconsider: "I think [Balius's] income, in spite of everything you've said, is greater than hers." Balius insists that the income disparity is not supported by any evidence, that the chancellor did not use the proper evidentiary standard, and that manifest error resulted. We disagree.
*307 ¶ 17. As the trier of fact, the chancellor evaluates the sufficiency of the proof by determining the credibility of the witnesses and the weight of their testimony. Vinoski v. Plummer, 893 So.2d 239, 243 (¶ 14) (Miss.Ct.App.2004) (quoting Fisher v. Fisher, 771 So.2d 364, 367 (¶ 8) (Miss.2000)). Moreover, "this Court must affirm a chancellor on a question of fact unless upon review of the record we are left with the firm and definite view that a mistake has been made." Rice Researchers, 512 So.2d at 1264 (citations omitted). Directly after addressing the income disparity issue during the reconsideration hearing, the chancellor explained that "the emphasis probably should be placed on the fact that he is the one who caused her to incur [these] costs and he did it without justification." Thus, the court's finding of an income disparity was not essential to the court's decision to award monetary sanctions. The chancellor made it clear that his decision to award sanctions stemmed primarily from other facts. Therefore, this issue is without merit.
¶ 18. Under this assignment of error, Balius also takes issue with a statement made by the chancellor during the reconsideration hearing that Gaines "had already experienced the problem of him not bringing the child back and she had to fly over here and get the child at her own expense when she really couldn't afford to do it." Even if the chancellor's statement was not supported by sufficient evidence, this statement was not listed as a finding of fact in either judgment. Therefore, the relevance of this statement to the judgment as a whole is questionable. Moreover, during cross-examination Balius was asked "isn't it true that in October of 2002 you brought the child here and refused to return the child unless Melanie came out here at her expense and got him; isn't that right?" Balius replied, "The answer is yes." This in court admission alone is sufficient evidence to support the chancellor's statement. This issue is without merit.

IV. Whether the trial court was manifestly wrong, clearly erroneous, applied an erroneous legal standard, or abused its discretion in failing to find Gaines in willful contempt of court.
¶ 19. Balius filed four motions requesting that Gaines be held in civil or criminal contempt for allegedly interfering with his exercise of court-ordered visitation on several occasions. The chancellor did not find "one shred of credible evidence" that Gaines was guilty of contempt. Balius asserts that he showed the court that Gaines prevented the exercise of his court-ordered visitation on three separate occasions, including: Christmas 2002, February 2003, and April 2003. According to Balius, the record shows that Gaines was clearly in willful contempt. Balius argues that the court's failure to find Gaines in contempt and sanction her with jail, costs, and expenses constitutes an abuse of discretion.
¶ 20. In Moulds v. Bradley, 791 So.2d 220, 224 (¶ 6) (Miss.2001), the court distinguished between civil and criminal contempt. The purpose of civil contempt is to "coerce action while criminal contempt is to punish for violation of an order of court." Id. While a jail sentence imposed for a violation of civil contempt ceases upon the contemnor "purging himself of the contempt ... a criminal contempt proceeding is maintained solely ... to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court." Id. (citations omitted). Balius argues that the trial court erred by its failure to punish Gaines for prior conduct, *308 which is an argument for criminal, rather than civil contempt.
¶ 21. A citation for criminal contempt is only appropriate "when the contemnor has willfully, deliberately and contumaciously ignored the court." Premeaux v. Smith, 569 So.2d 681, 684 (Miss. 1990) (citing Cooper v. Keyes, 510 So.2d 518, 519 (Miss.1987)). The party asserting criminal contempt must prove each element beyond a reasonable doubt. Premeaux, 569 So.2d at 684 (citations omitted). Furthermore, it is well settled that "contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss.1990).
¶ 22. The chancellor reviewed documents and listened to extensive testimony from both Balius and Gaines regarding each the alleged acts of contempt. When asked about the Christmas 2002 visitation, Gaines testified as to her belief, based on the court orders, that holiday visitation was to take precedence over regular visitation. Gaines also testified as to the controversy surrounding the February 2003 visitation, namely, the risk that Balius might not return Jared to California after the visitation. The record shows that Balius chose not to exercise the April 2003 visitation. Moreover, Balius admitted during cross-examination that Gaines wrote him a letter expressing her desire for Balius to exercise the April visitation. That letter and others written between the parties and their attorneys were submitted into evidence for the court's review. Thus, there is sufficient evidence to support the chancellor's decision that Balius failed to meet his burden: to show willful contempt of court beyond a reasonable doubt. This issue is without merit.

V. Whether the trial court was manifestly wrong, clearly erroneous, applied an erroneous legal standard, or committed an abuse of discretion in entering a final order without the guardian ad litem's final report.
¶ 23. Balius contends that the trial court committed reversible error when it entered judgment before the guardian ad litem made any recommendations to the court. Balius further argues that the court was required to include in its findings of fact and conclusions of law a summary of the guardian ad litem's recommendations and the court's reasons for not adopting those recommendations. To support his position, Balius relies on cases where the appointment of the guardian ad litem was required by statute. S.N.C. and J.H.C., 755 So.2d at 1077 (termination of parental rights); In Interest of D.K.L., 652 So.2d 184, 191 (Miss.1995) (child's mother sought removal of restrictions imposed on the stepfather after he pled guilty to gratification of lust with the child).
¶ 24. As previously stated, a chancellor is not required to accept the recommendations of a guardian ad litem, nor is he required to state his reasons for rejecting those recommendations, if the appointment of the guardian ad litem was not mandatory. Passmore, 820 So.2d at 751 (¶ 13). The opinion of a guardian ad litem does not dictate the decision of a chancellor; to hold otherwise would "intrude on the authority of the chancellor to make findings of fact and apply law to those facts." Id. (quoting S.N.C. and J.H.C., 755 So.2d at 1082 (¶ 17)). The appointment of the guardian ad litem in this case was not mandatory; the guardian ad litem was appointed upon Balius's request. Thus, the chancellor in this case was not required to defer to the recommendations *309 of the guardian ad litem in this case, nor was he required to explain his reasons for not doing so. Furthermore, the guardian ad litem never presented the court with any recommendations, as Balius did not request that the court appoint the guardian ad litem until November 12, 2003, just days before the trial. Therefore, we find this issue to be without merit.

VI. Whether the trial court was manifestly wrong, clearly erroneous, applied an erroneous legal standard or abused its discretion in sanctioning Balius and awarding attorney's fees to Gaines from Balius and not awarding Balius all costs to include his attorney's fees.
¶ 25. Under this assignment of error, Balius again argues that the court failed to find Gaines in willful contempt of court, and that it awarded attorney's fees to Gaines in error. Balius further alleges that there was not one specific finding or explanation as to why the sanctions and attorney fees were awarded. The court specifically found that it was Balius's intent to financially oppress Gaines, and that he continued to act angry and unreasonable in his dealings with Gaines concerning Jared. From these findings, the court granted Gaines's motion for sanctions and awarded costs including attorneys fees to Gaines. Balius fails to cite any authority that would require more detailed findings to support the award of attorney's fees. Therefore, this issue is without merit.
¶ 26. On cross-examination, Balius admitted that he told Gaines he was "going to kill [her] before it's over with." Balius further admitted that he made the statement during a visitation exchange, while Gaines was holding Jared. Despite this admission however, Balius insists that he came in to court with clean hands and should have been entitled to attorney fees as a result of Gaines's contempt. Criminal contempt is an offense against the court. Varvaris v. State, 512 So.2d 886, 887 (Miss. 1987). Thus, even if the court had found Gaines in willful contempt of court, the law does not require a chancellor to impose punishment. We find that this issue is without merit.

VII. Whether the trial court was manifestly wrong, clearly erroneous, applied an erroneous legal standard, or abused its discretion in failing to find a material change in circumstances affecting the best interests of the child had occurred and in failing to award Balius primary custody.
¶ 27. A party moving for a modification of a child custody decree must prove the following assertions by a preponderance of the evidence: (1) since entry of the decree sought to be modified, there has been a material chance in circumstances which adversely affect the welfare of the child; and (2) the best interest of the child requires the custody modification. Ash v. Ash, 622 So.2d 1264, 1265-66 (Miss. 1993). The chancellor must first find a material adverse change in circumstances before embarking on a best interest of the child analysis. Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). There are numerous guidelines for a chancellor to consider, however, "a change in custody will not be made for the purpose of rewarding one parent or punishing the other." Ash, 622 So.2d at 1266 (citing Tucker, 453 So.2d at 1297). The chancellor must consider the totality of the circumstances, and always bear in mind that the "polestar consideration [is] the best interest and welfare of the child." Ash, 622 So.2d at 1266.
*310 ¶ 28. Balius moved for a change of custody on December 27, 2002, alleging that Gaines interfered with visitation on several occasions: Father's Day 2002 (Gaines required thirty days notice from Balius); summer visitation 2002 (Gaines changed the dates of her summer visitation with Jared which caused Balius to have the child during a week that he had not planned); and Christmas 2002 (after some disagreement over holiday visitation, Balius traveled to California and did not receive Jared). Balius contended that Gaines had not been acting in the best interest of the child, and that her conduct was not conducive to developing a close and loving relationship between parents and child. Citing Ash, Balius further argued that Gaines's interference with visitation constituted an adverse material change and warranted a change in custody. Ash, 622 So.2d at 1264. A second motion for contempt, sanctions, and change of custody was filed by Balius on February 18, 2003, in response to the February 2003 visitation. Then, after declining to exercise the April/Easter visitation, Balius filed a final motion for contempt, temporary and permanent change in custody on May 30, 2003.
¶ 29. In Ash, the special chancellor found that the mother's "continued refusal" to allow the father to visit his son subjected the child to repeated confrontations, and that at least one of the confrontations was "extremely physical." Ash, 622 So.2d at 1266. According to the special chancellor, the mother's willful disobedience of court orders constituted a material change that could not be corrected by contempt, and he ordered a change in custody from the mother to the father. Id. at 1267. In affirming the special chancellor's decision, the Mississippi Supreme Court stated that "this case should not be considered as establishing precedent for the taking of such drastic action in visitation disputes." Id. at 1266. Moreover, the supreme court emphasized that the limited scope of review dictates that an appellate court "`will not arbitrarily substitute [its] judgment for that of the chancellor who is in the best position to evaluate all factors relating to the best interests of the child.'" Id. (quoting Yates v. Yates, 284 So.2d 46, 47 (Miss.1973)).
¶ 30. The instant case differs greatly from Ash in that the chancellor did not find Gaines to be responsible for the problems with visitation, much less in willful disobedience of court orders. In his ruling from the bench, the chancellor stated that he could not find "one shred of credible evidence that Ms. Gaines was guilty of any contempt of court" and he further found Balius's pleadings to be "baseless." In Creel v. Cornacchione, 831 So.2d 1179, 1183 (¶ 16) (Miss.Ct.App.2002), this Court held that specific findings under the Albright factors by the chancellor were unnecessary because the mother's proof, which centered around the father's alleged denial of visitation and interference with telephone communications, was insufficient to show that there had been a material change in circumstances. As in Creel, Balius fell long short of his first hurdle: proof by a preponderance of the evidence that there had been a material change in circumstances adversely affecting the welfare of the child. In failing to meet this burden, Balius failed to open the door to a best interest of the child analysis and the chancellor was not required to address the Albright factors. Therefore, we find that this issue is without merit.

VIII. Whether the trial court erred in failing to find Gaines in violation of the clean hands doctrine.
¶ 31. Balius argues that Gaines should have been estopped from any relief from *311 the court because her hands were "filthy with contempt." As stated previously, the record supports the trial court's finding that Gaines was not guilty of willful contempt beyond a reasonable doubt. Furthermore, the maxim of equity that "he who comes into equity must come with clean hands" is supplemented by the maxim that "he who seeks equity must do equity." O'Connor v. Dickerson, 188 So.2d 241, 246 (Miss.1966). The trial court found that Balius's conduct evidenced an intent on his part to oppress Gaines financially, and the court sanctioned him accordingly. Therefore, in light of Balius's oppressive behavior, we find that this issue is without merit.
¶ 32. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.