LEE, C.J.,
for the Court:
FACTS AND PROCEDURAL HISTORY
¶ 1. Amber Leigh Crabb and Jessie Joe Bowden had a relationship that resulted in a daughter, Lilyana, who was born on July 23, 2009, while Jessie was deployed in Iraq. Upon returning from Iraq in March 2010, Jessie sought custody of Lilyana, and he was granted custody by the Alcorn County Chancery Court on May 27, 2011. Jessie was determined to be the biological father of Lilyana. As a result, her name was legally changed from Lilyana Joleigh Crabb to Lilyana Joleigh Bowden. Additionally, Jessie was given physical custody of Lilyana, and Amber was granted visitation and ordered to pay $100 in monthly child support.
¶ 2. Amber appeals, arguing the chancellor erroneously applied the Albright factors to the facts of the case.
STANDARD OF REVIEW
¶ 3. This Court will not disturb a chancellor’s findings “unless manifestly wrong or clearly erroneous.” Sanderson v. Sanderson, 824 So.2d 623, 625 (¶ 8) (Miss.2002). However, “[a] chancellor’s conclusions of law are reviewed de novo.” Lowrey v. Lowrey, 25 So.3d 274, 285 (¶ 26) (Miss.2009).
DISCUSSION
¶4. Amber argues that the chancellor misapplied the Albright factors to the facts of the case, specifically that certain factors should not have been weighed in Jessie’s favor and that certain factors considered neutral should have favored her.
¶ 5. In child-custody cases, the polestar consideration is the best interest of the child. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In Albright, the Mississippi Supreme Court designated factors to determine the “best interest” of a child in a custody case. Id. These factors include:
[1] the age[,] ... health, and sex of the child;
[2] a determination of the parent that has had the continuity of care pri- or to the separation;
[3] which parent has the best parenting skills and which parent has the willingness and capacity to provide primary child care;
[4] the employment of the parent and responsibilities of that employment;
[5] the physical and mental health and age of the parents;
[6] the emotional ties of the parent and child;
[7] the moral fitness of the parents;
[8] the home, school, and community record of the child;
[9] the preference of the child at the age sufficient to express a preference by law;
[10] stability of home environment and employment of each parent; and
[11] other factors relevant to the parent-child relationship.
Id. at 1005.
¶ 6. The chancellor found the following factors favored Jessie: the age, health, and sex of the child; parenting skills; physical and mental health and age of the parents; moral fitness of the parents; and stability of the home environment and employment. The chancellor found that Amber was the best suited parent in regards to continuity of care.
¶ 7. The chancellor found the following factors favored neither parent: employment and responsibilities of that employment; emotional ties of parent and child; *350 home, school, and community record of the child; and other factors. Since Lilyana was not of a sufficient age to express a preference, the chancellor found that factor inapplicable.
¶ 8. Neither party contests the findings of the chancellor regarding continuity of care; home, school, and community record of the child; preference of the child; and other factors. Therefore, these factors will not be addressed.

I. Age, Health, and Sex of the Child

¶ 9. As to the age, health, and sex of the child, the chancellor focused on the health of Lilyana. The chancellor noted that Lilyana’s medical problems arose from lack of proper care, finding that Amber “failed to provide consistent proper care for the infant child in tending to her diaper[s], safety, and clothing.”
¶ 10. Two health issues the chancellor addressed were Lilyana’s diaper rash and her respiratory problems. According to the testimony and evidence presented, Lil-yana had persistent and severe diaper rash, which lead to a staph infection for which she was hospitalized. Although Amber testified that the diaper rash was a result of Lilyana’s sensitive skin, Jessie stated when he treated Lilyana’s diaper rash while she was in his custody, the rash began to heal. Ben Crabb, Amber’s ex-husband with whom she lived for a period of time, testified that on one occasion Lil-yana was left in her car seat for multiple hours with her diaper and clothes soaked with urine.
¶ 11. Also, Lilyana suffered from seasonal allergies and had been admitted to the hospital for bronchitis. Amber testified that she lived with her mother and that her mother smokes cigarettes but not around the children. Jessie’s wife, Nicole, testified that Lilyana smells of cigarette smoke almost every time she comes to their house. The chancellor noted that Jessie did not have “cigarette use at his residence.”
¶ 12. Amber contends that the chancellor erred by failing to consider that Lilyana was a child of tender years and failed to address her age in its consideration of this factor. Under Mississippi Code Annotated section 93-5-24(7) (Rev. 2004), awarding either legal or physical custody to the mother is no longer presumed to be in the child’s best interest. Although the tender-years doctrine was “significantly weaken[ed]” by section 93-5-24(7), “there is still a presumption that a mother is generally better suited to raise a young child.” Passmore v. Passmore, 820 So.2d 747, 750 (¶ 9) (Miss.Ct.App.2002).
¶ 13. The chancellor did, in fact, address Lilyana’s age, noting that at the time, she was twenty-two months old. And the chancellor specifically stated that “Jessie Joe [had] demonstrated the ability to properly care for the needs of a small child on a consistent basis.... ” The chancellor was not manifestly wrong in finding this factor favored of Jessie.

II. Parenting Skills and Willingness and Capacity to Provide Primary Child Care

¶ 14. The chancellor found this factor favored Jessie, stating Amber’s slow response in attending to Lilyana’s medical needs and Amber’s poor choices had “exposed [Lilyana] to unfavorable circumstances.”
¶ 15. Besides Lilyana, Amber has four other children, all boys, from her previous marriage to Ben. At the time of trial, Amber did not have custody of the boys.
¶ 16. Testimony was given that Amber used profanity when speaking to both Lil-yana and her four boys; that she was violent with the children, including slap *351 ping them; that she was inattentive, allowing them to play with gasoline or with charcoal and a lighter; that she disregarded Lilyana’s safety by placing the car seat in the front seat of the car rather than in the back seat where it belonged; and that she did not know how Lilyana had burned her leg. Lilyana’s condition worried Jessie’s mother so much that she contacted the Mississippi Department of Human Services.
¶ 17. From the record, it is clear the chancellor was not manifestly wrong in determining this factor in favor of Jessie.

III.The Employment of the Parents and Responsibilities of that Employment

¶ 18. The chancellor found that both parties were employed full-time and would need help in caring for Lilyana. Therefore, this factor favored neither party-
¶ 19. Jessie testified at trial that he was employed with the National Guard and reported three days a week and two weekends a year. Amber testified that she was not employed at the time of trial, although she had interviewed for a position prior to trial. No evidence was presented that either party was employed full-time. Jessie’s position with the National Guard was part-time, and Amber was unemployed.
¶ 20. While the chancellor erred in applying this factor, she clearly did not err in her application of the remaining factors. “[E]ven though we find clear error in the chancellor’s finding on this one particular factor, we do not find that this particular error tainted the chancellor’s analysis and application as a whole.” Parker v. South, 913 So.2d 339, 350 (¶44) (Miss.Ct.App.2005). Therefore, the chancellor’s error on this issue was harmless.

IV. Physical and Mental Health and Age of the Parents

¶ 21. After finding that both parties were in good physical health, the chancellor found this factor favored Jessie, because unlike Amber, Jessie had no mental-health issues.
¶ 22. Amber contends that the chancellor erred in finding this factor favored Jessie, arguing that no testimony was given that her mental-health issues inhibited her ability to raise Lilyana. Helen Rider, an employee at Region IV Timber Hills Mental Health Center, testified that Amber had been diagnosed with bi-polar disorder in 2004; however, she had not examined Amber after 2007. She testified that as of 2007, Amber was fit to raise Lilyana.
¶ 23. The chancellor heard evidence of Amber’s mental-health issues and the limitations that those issues may or may not have presented. “Mississippi’s chancellors are charged with weighing the evidence presented.... ” Keough v. Keough, 742 So.2d 781, 782 (¶5) (Miss.Ct.App.1999). Here, the chancellor was within her discretion to weigh that evidence and determine the factor favored Jessie.

V. Emotional Ties of Each Parent and the Child

¶24. The chancellor found that both parties loved the child, and, therefore, this factor was neutral. Amber argues that the chancellor again failed to take into consideration the tender-years doctrine and the age of the child, and was erroneous in her determination that this factor was neutral.
¶ 25. Numerous witnesses testified about how both parties loved the child and spent time with her. There is nothing in the record to show that the chancellor was clearly erroneous in finding this factor to be neutral.

*352
VI. Moral Fitness of the Parents

¶ 26. Before finding this factor favored Jessie, the chancellor stated that while both parties had made poor choices in the past, “Amber’s poor decision-making [continued] following the birth of the child.... ” Amber asserts that the chancellor should have found this factor to be neutral because nothing in the record showed that these moral issues adversely affected Lilyana. However, copious amounts of testimony and exhibits were submitted at trial regarding Amber’s moral fitness.
¶ 27. Amber testified that she was in a relationship with Chris Dickerson, that he has had a drug problem, and that she and Lilyana had spent the night at his home. Amber also testified that she had been in a relationship with Randall Stewart, a registered sex offender. Amber stated that she had allowed her four boys to be near Stewart and thought that his sex-offender status was not relevant, because the statutory rape was “consensual” and a “condom was used.”
¶28. The chancellor specifically noted the photograph Amber had posted on her Facebook page, showing her drinking from a forty-ounce bottle of beer while in a vehicle. When questioned about it, Amber laughed and admitted that the photograph would not “look right” to other people. Besides the photo of Amber drinking, several other photographs that had been posted on her Facebook page were also admitted into evidence. One photograph was of Amber and two of her four boys; underneath the photograph, she wrote that one of her boys was “a bitch in the mornings like his mama. Haha!” Another photograph depicted Lilyana with a candy ring pop in her mouth instead of a pacifier.
¶ 29. From the evidence presented, it is clear that the chancellor was not manifestly wrong in his finding that this factor favored Jessie.

VII. Stability of the Home Environment and Employment of Each Parent

¶ 30. The chancellor found this factor favored Jessie, focusing on the numerous locations Amber had resided and her frequent change in jobs. Amber concedes that she had lived in multiple locations and had frequently changed jobs; however, she maintains that there was no evidence of detriment to the child.
¶ 31. Although at the time of trial Amber rented an unfurnished mobile home in Corinth, Mississippi, to show “stability,” she actually lived with her mother in Tennessee. Amber testified that prior to living with her mother, she had lived in several locations, including with her ex-husband Ben, her father, and Darlene Steward. She also testified that she had stayed with Jessie’s family and a boyfriend for a period of time.
¶ 32. Jessie, on the other hand, had moved only once since Amber’s birth. At the time of trial, Jessie lived with his wife Nicole and her two daughters from a previous marriage. There is nothing in the record to show that the chancellor was manifestly wrong in finding this factor favored Jessie.
¶ 33. The Mississippi Supreme Court has stated, “While the Albright factors are extremely helpful in navigating what is usually a labyrinth of interests and emotions, they are certainly not the equivalent of a mathematical formula. Determining custody of a child is not an exact science.” Lee v. Lee, 798 So.2d 1284, 1288(1115) (Miss.2001). As stated above, the polestar consideration in custody cases is the best interest of the child. Albright, 437 So.2d at 1005. Here, the chancellor found that it was in Lilyana’s best interest to be in *353 Jessie’s custody. Nothing in the record shows that the chancellor was manifestly wrong in applying the Albright factors or in determining the best interest of the child. Therefore, we affirm.
¶ 34. THE JUDGMENT OF THE AL-CORN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT. JAMES, J., NOT PARTICIPATING.