BARNES, J.,
for the Court:
¶ 1. The County Court of Warren County awarded permanent custody of Kathryn Morris, a minor child, to her natural *947 father, Abraham Morris (Abe). The trial court granted the child’s mother, Laura Strickland Rosser, visitation and ordered her to pay child support. Laura appeals the trial court’s order, and finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Laura and Abe are the natural parents of Kathryn, who was born out of wedlock on March 3, 2007. The couple ended their relationship a few months after Kathryn’s birth, and on December 5, 2007, Laura filed a complaint for paternity and other relief against Abe in the County Court of Warren County.[1] Laura asserted that Abe was Kathryn’s biological father and requested child support. Abe did not contest paternity and filed a counter-petition for custody and support.
¶ 3. On February 14, 2008, the county court adjudicated Abe as Kathryn’s natural father and awarded Laura “permanent care, custody and control” of the minor child and child support of $600 per month. The court withheld ruling on visitation, however, due to several issues concerning Laura’s and Abe’s ability and willingness to care for the child. The couple held extreme animosity toward one another, as did the minor child’s grandmothers. Therefore, a guardian ad litem was appointed, and the parties eventually agreed on visitation on April 17, 2008. The county court also reserved the right to enter additional orders or modify the current order.
¶ 4. On April 2, 2009, the county court held a hearing regarding multiple motions for contempt that had been filed. Still concerned about Laura’s and Abe’s ability to take care of the child, due to Laura’s alcohol abuse and Abe’s issues with anger, the trial judge issued a temporary order, requiring psychological evaluations of Abe and Laura, and awarding temporary joint custody to Kathryn’s maternal and paternal grandmothers. The order stated that Kathryn was to spend alternating two-week periods at each grandmother’s home. Abe’s parents lived in Columbus, Mississippi; Laura’s parents lived in Vicksburg, Mississippi. The court’s order further dictated that neither Abe nor Laura be left alone with the child.[2] As a result of the court’s order, Laura entered rehabilitative treatment for drug and alcohol abuse, and Abe began psychological treatment for his issues with anger and anxiety.
¶ 5. Shortly following the entry of the court’s temporary order, Abe moved into his parents’ home in Columbus and helped take care of Kathryn during her two-week visits. Abe has worked since that time as a salesman at various car dealerships in Columbus. He has also been receiving regular psychological treatment for his anger issues.
¶ 6. Seeking employment opportunities, Laura moved to Dallas, Texas, in December 2009. She initially lived with her aunt, but she moved into an apartment in March 2010. She subsequently met Brad Rosser through her church and married him. Since her move to Dallas, Laura has been employed full-time as a outside sales representative for a radio station.
¶ 7. A hearing on permanent custody was held on June 6-7, 2011. The trial court entered a memorandum opinion on October 25, 2011, awarding permanent custody to Abe based on its analysis of the *948 factors set forth by Albright v. Albright, 437 So.2d 1003 (Miss.1983).[3] The opinion stated the parties had thirty days to reach an agreement on visitation, child support, health insurance, and “any other matters that need to be addressed.” Laura filed a motion for reconsideration on January 4, 2012; Abe filed a reply on January 13, 2012.[4] On March 12, 2012, the trial court denied both motions and entered an agreed order, granting “reasonable visitation” to Laura and ordering her to pay child support in the amount of fourteen percent of her adjusted gross income. Laura has filed a timely notice of appeal, challenging the trial court’s findings regarding certain Albright factors and claiming that a material change in circumstances has occurred that warrants a change in custody. Finding no error, we affirm the judgment.
DISCUSSION
I. Whether the trial court’s application of the Albright factors was in error.
¶ 8. In appeals concerning child custody, the “polestar consideration” is the best interest of the child. O’Briant v. O’Briant, 99 So.3d 802, 805 (¶ 12) (Miss.Ct.App.2012) (citation omitted). “We may only reverse a child-custody determination if the [trial judge] is manifestly wrong, clearly erred, or applied an erroneous legal standard.” Id. at (¶ 13). If the trial court “properly applies and considers the child-custody factors from Albright, there is no manifest error.” Id. (citing Smith v. Smith, 614 So.2d 394, 397 (Miss.1993)).
¶ 9. In Albright, the Mississippi Supreme Court set forth several factors to consider in determining child custody:
(1) age, health, and sex of the child;
(2) a determination of the parent that has had the continuity of care prior to the separation;
(3) which has the best parenting skills and which has the willingness and capacity to provide primary child care;
(4) the employment of the parent and responsibilities of that employment;
(5) physical and mental health and age of the parents;
(6) emotional ties of parent and child;
(7) moral fitness of the parents;
(8) the home, school and community record of the child;
*949 (9) the preference of the child at the age sufficient to express a preference by law;
(10) stability of home environment and employment of each parent and other factors relevant to the parent-child relationship.
Jordan v. Jordan, 105 So.3d 1130, 1133 (¶ 12) (Miss.Ct.App.2012) (citing Albright, 437 So.2d at 1005). After addressing the Albright factors, the trial judge concluded that awarding permanent custody to Abe was in Kathryn’s best interest. However, Laura claims that the trial court made erroneous findings in its application of certain Albright factors contained in the October 25, 2011 memorandum opinion.[5] We-will address these specific factors in turn.

i. Age, Health and Sex of the Child

¶ 10. The trial judge found that this factor favored neither parent. Laura asserts that since Kathryn was a young girl, approximately four years old at the time of trial, this factor should have favored her, and she should have been granted custody. As this Court recently noted in Crabb v. Bowden, 110 So.3d 346, 350 (¶ 12) (Miss.Ct.App.2013):
Under Mississippi Code Annotated section 93-5-24(7) (Rev.2004), awarding either legal or physical custody to the mother is no longer presumed to be in the child’s best interest. Although the tender-years doctrine was “significantly weakened” by section 93-5-24(7), “there is still a presumption that a mother is generally better suited to raise a young child.” Passmore v. Passmore, 820 So.2d 747, 750 (¶ 9) (Miss.Ct.App.2002).
¶ 11. During the testimony of Abe’s mother, Judy Morris, the trial judge did express concern regarding Abe’s ability to take care of a young girl. To address the court’s concern, Abe and Judy testified that Abe had been very involved in Kathryn’s daily care. Judy stated: “And like I say, [Abe’s] done this since Kathryn’s been in the world. He’s changed her diaper, and given her baths[.]” Abe also testified that he helps his daughter get ready for bed a couple of times a week and that he plays games and reads to her regularly. He told the trial judge, “I would have a more hard understanding to take care of a boy because for [four] years[,] I’ve learned how to take care of a girl.” While Laura, as the mother, is presumed better suited to care for a young child, the record reflects that she had a lot less contact with Kathryn than Abe. This was due to her lack of physical proximity to Kathryn, since Laura lived in Dallas, six hours from her mother’s home in Vicksburg.
¶ 12. In regard to the child’s health, testimony showed that Kathryn was healthy and “age-appropriate.” She had a designated pediatrician in Columbus, and Abe occasionally attended those doctor’s appointments. Laura’s mother stated there had been no need for Kathryn to have a doctor when she stayed with her in Vicksburg. In its opinion, the trial court noted that Laura “does not know who her daughter’s doctors are and has not inquired.”
¶ 13. We find no error in the trial court’s finding that this factor favored neither parent.

ii. Determination of the Parent Who Has Had the Continuity of Care Prior to the Separation

¶ 14. Although the trial court stated that this factor favored Abe, Laura argues that this factor should not have *950 favored either party, since it was evident that the Kathryn’s grandmothers had provided the majority of the child’s care for the previous two years.
¶ 15. There is little evidence regarding the child’s care prior to the trial court’s April 2009 temporary order. Abe went to live with his parents after entry of the temporary order and had daily contact with his daughter during the two weeks per month that she lived with his mother. He saw Kathryn every morning and helped put her to bed at night. At the June 2011 hearing, Abe expressed knowledge of Kathryn’s school curriculum and her educational milestones, such as letters and numbers. When asked at the hearing how he would “deal with” obtaining custody, Abe stated:
No different than right now. The only difference is I would have to do it more often. I already dress Kathryn. I already bathe Kathryn. I already brush her teeth. I already brush her hair. I can braid her hair. I mean, you know these things I can already do.
The trial judge concluded: “It is clear that the primary caregiver for Kathryn while she has been in Columbus has been Abe, with significant help from his mother.”
¶ 16. Laura, on the other hand, only saw Kathryn approximately five times in the two-year period prior to the hearing, since she had to drive from Dallas to Vicksburg to see her daughter. She stated that it was difficult to take the necessary time off to make the trip on a regular basis. The trial judge observed in his findings: “Since April 2, 2009, this child has spent virtually no significant time with her mother.”
¶ 17. Accordingly, we find no manifest error in the court’s finding that this factor favored Abe.

Hi Physical and Mental Health and Age of the Parents

¶ 18. Both parents were in their mid-thirties and in good physical health, although both parties admitted to smoking cigarettes. It is evident there were psychological issues with both parties that precipitated the court’s April 2009 order, providing that the child be placed in the temporary custody of Laura’s and Abe’s mothers.
¶ 19. The trial judge found that Laura had done “the bare minimum to convince [the] Court that she has complied with the April 2, 2009 order.” He observed that she had lied under oath regarding her drug and alcohol use. In May 2009, Laura tested positive for marijuana, but denied using the substance to her rehabilitation counselor. She had another positive test for marijuana a month later. She lied about this drug use in her deposition. She did complete an intensive outpatient program through Region 8 Mental Health Services on July 30, 2009, but she eventually left rehabilitation outpatient counseling in December 2009. She continued to attend Alcoholics Anonymous meetings when she first moved to Texas, but she has since quit attending those meetings. The trial court noted various credit/debit charges to local taverns, pubs, and bars, but Laura claimed that she was not purchasing alcoholic drinks at those locations, unless it was for a friend or client. She also contended that a credit-card charge from a package store was for a bottle of wine given to a friend as a present. Laura did confess that she does have an occasional “sip” of a friend’s drink.
¶ 20. Regarding Abe’s progress, however, the trial judge remarked that while Abe was still battling issues with anger and anxiety, he had complied with the court’s temporary order and had sought professional help for his problems. It was *951 noted at the hearing that Abe’s parents had him involuntarily committed in June 2009 in order to wean Abe off of his prescribed Adderall. Abe explained that he had tried to wean himself off the drug without any help, but he experienced terrible side effects. After ten days of treatment, he returned to his parents’ home and began to seek regular treatment for his issues with anger and anxiety. Abe has been prescribed a non-narcotic medication for depression, and he admitted to drinking alcohol “occasionally.”
¶ 21. Abe told his therapist, Dr. Frances Baird, about various arguments/conflicts he had with coworkers. This evidence was admitted and discussed at the hearing. Laura argues that Abe’s history of altercations with his fellow employees at the car dealerships where he had worked “demonstrated that Abe still had a serious issue of controlling his rage and anger such to the extent that it was not appropriate for the [e]ourt to find this factor in favor of Abe.”
¶ 22. However, Dr. Baird observed that since he had been treating Abe, the altercations with his coworkers — only one of which lead to a physical altercation — had resulted in Abe withdrawing from the conflict, rather than letting the situation escalate. Dr. Baird further testified:
Frequently people that are sent in for anger management so-to-speak are sometimes under duress from other quarters and they don’t necessarily also want to be there, but I never got that feeling from Abe.... I think, he, you know, was again motivated, wanting to change. I think[ ] he wanted to be, and I still believe that he wants to be[,] a better human being. And the good news is that will make, you know, his relationship with his child certainly much better.
[[Image here]]
He appears to be motivated to really want to change his history and his pattern of acting out.
The trial judge noted: “There is no evidence that Abe has ever directed any anger or aggression toward Kathryn.” Thus, we find no error in the trial court’s finding for Abe on this factor.

iv. Emotional Ties of Parent and Child

¶23. The trial judge concluded that this factor favored Abe. To refute the court’s finding, Laura cites testimony that Kathryn was very attached to her and that the child clings to her when she sees her and is “extremely affectionate.” As already noted, however, it was shown at the hearing that Kathryn had little “significant” contact with her mother since April 2009.
¶24. Conversely, there was testimony that Abe had attended Kathryn’s preschool programs, knew her clothes and shoe sizes, and would regularly play games with Kathryn and read books to her. Judy stated:
I think[ ] she loves him a whole lot just by the fact that, you know, when he comes home he’s the go to person, you know. Whatever she’s wanting to do or whatever, she goes to daddy, you know, and asks him to take care of it. So, I think, that — I feel and think that they have a very close relationship.
Reviewing the record, we find no error in the court’s finding that Abe was favored as to this factor.
¶ 25. Laura does not challenge the court’s findings regarding the remaining Albright factors. Upon review, we find that the trial court’s analysis of the Al-bright factors in determining the best interest of the child did not constitute manifest error. Accordingly, we affirm the judgment.
*952 II. Whether Abe’s change of residence constituted a material change in circumstances.
¶26. Shortly after the June 2011 hearing, Abe moved from his parents’ home and moved in with his girlfriend, who is now his wife. Laura argues that this constitutes a material change in circumstances that warrants a modification of custody, as it adversely impacts the child. We note that Abe’s mother, Judy, clearly informed the trial court that Abe had been looking for “an appropriate place for h[im] and Kathryn to move into.” Abe told the trial court that the only reason he stayed with his parents was so he could spend time with his daughter. Abe also testified that he was in a “very committed relationship” with his girlfriend, Michelle, at that time, and she was present at the hearing, although she did not testify. Therefore, the trial judge was aware that Abe was considering a move from his parents’ home in the immediate future and that his relationship with Michelle could lead to marriage and was able to take these factors into account in awarding permanent custody to Abe.
¶ 27. Furthermore, Laura has not brought this issue of a “material change in circumstances” before the trial court by way of a motion for modification of custody. Therefore, her claim is premature, and this issue is not ripe for consideration by this Court.
¶ 28. THE JUDGMENT OF THE COUNTY COURT OF WARREN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. Although neither party resides in Warren County, Laura was living with her parents in Warren County when she filed her initial complaint.

. The trial judge actually failed to sign the temporary order, but he subsequently did so on October 19, 2011, nunc pro tunc to April 2, 2009.

. Neither party has challenged the trial court's use of the Albright factors in the memorandum opinion, even though a prior order awarding permanent custody to Laura was entered on February 14, 2008. Once a prior custody determination has been made, the trial court must first find that an adverse material change in circumstances has occurred before employing the Albright factors to determine whether modification of custody would be in the child’s best interest. Reed v. Fair, 56 So.3d 577, 581 (¶¶ 10-11) (Miss.Ct.App.2010) (citations omitted). However, the court did not making any specific Albright findings in the February 14, 2008 order and, as already noted, the remaining issue of visitation had yet to be addressed. Although not stated in the April 2009 order, the trial court clearly found that a material change in circumstances had occurred that adversely affected the child—hence, the award of temporary joint custody to Kathryn’s grandparents.

. Although the trial court’s memorandum opinion issued on October 25, 2011, granted permanent custody to Abe, it was not a final judgment under Mississippi Rules of Civil Procedure 59 and 60. As noted, the opinion left open several questions, including visitation and child support; therefore, it was not an appealable order. Although Laura's motion for reconsideration was untimely, as it related to the memorandum opinion, it does not affect our jurisdiction to consider her appeal of the court’s subsequent March 12, 2012 order.

. Laura does not dispute the court's findings on some of the Albright factors. As such, we will not address those factors unchallenged on appeal.